[No. 28633-9-III.    Division Three.    December 9, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. MIGUEL ANGEL ACEVEDO, *Appellant*.

*Andrea Burkhart* (of *Burkhart & Burkhart PLLC*), for appellant.

*Rea L. Culwell, Prosecuting Attorney,* and *June Riley, Deputy*, for respondent.

¶1 SWEENEY, J. — This appeal follows a conviction for possession of a stolen motor vehicle. The defendant wanted to argue that what he possessed was a pile of car parts because he bought the vehicle sans motor or transmission and in a wrecked condition. He moved to dismiss at the close of the State's case on that theory and, alternatively, proposed a jury instruction defining a vehicle as self-propelled. The court refused to dismiss and refused to give his proposed jury instruction. We agree with the trial court that the vehicle did not have to be operable to satisfy the elements of this crime. We do, however, conclude that the court improperly ordered restitution for the full value of the vehicle in an undamaged condition because that level of restitution appears unrelated to the crime for which he was convicted. We also conclude that the prohibition against possession of deadly weapons is not crime related or authorized by statute. We, therefore, affirm in part, reverse in part, and remand for entry of a new judgment and sentence.

## FACTS

¶2 Someone broke into Tietan Auto Body Shop in Walla Walla, Washington, and stole Dan Wold's 1998 Acura. The

thief drove the car through a security fence, scattering the Acura's headlights and other pieces of its front end on the ground.

¶3  Miguel Angel Acevedo bought the 1998 Acura with no front end, engine, or transmission from someone named Manuel in Milton-Freewater, Oregon. Mr. Acevedo wanted the Acura's parts for his own Acura. Manuel delivered the Acura to the house Mr. Acevedo was renting in Dayton. Mr. Acevedo paid Manuel $200 and told him he would give him another $200 when he received the Acura's title. He never heard from Manuel again. Mr. Acevedo became suspicious and left the car under a tarp in the rental property's backyard when he moved out.

¶4  The rental property's owner, Duane Lowe, contacted the sheriff's office after Mr. Acevedo moved out. He told Deputy Nicholas Henzel that he found the 1998 Acura in the backyard of the rental property. It had no motor, transmission, wheels, or tires. Deputy Henzel read the vehicle identification number to dispatch and learned that the Acura had been stolen.

¶5  The State charged Mr. Acevedo with one count of possession of a stolen vehicle. Mr. Acevedo moved to dismiss the charge after the State rested. He argued that he possessed a bunch of automobile parts, not a motor vehicle, and therefore could not be guilty of possession of a stolen vehicle as a matter of law. The court concluded that the question was one for the jury and denied the motion:

> I'm—I'm not ruling as a matter of law that [the Acura] definitely was capable of propulsion on the defendant's watch. Not at all. That's—the jury's got to decide that.

Report of Proceedings (RP) at 224. The court later rejected Mr. Acevedo's proposed jury instruction defining "motor vehicle" as "any vehicle that is self-propelled." RP at 242, 245. It instead concluded that the Acura was a motor vehicle even though it was inoperable:

> I rule as a matter of law since there seems to be a case of first impression, at least in the Hell's Canyon Circuit,[1] that a parts car, absent a motor and transmission, constitutes a motor vehicle for theft and or possession of stolen property purposes in Washington.

RP at 246. And it refused to allow Mr. Acevedo to argue that the Acura was not a "motor vehicle." RP at 246.

¶6 The jury found Mr. Acevedo guilty of possessing a stolen vehicle. Mr. Acevedo moved for a new trial based on the court's ruling that the inoperable Acura was a motor vehicle as a matter of law. The trial court reiterated that "for purposes of the possession of a stolen motor vehicle statute, operability [is] not required." RP at 299. And it denied Mr. Acevedo's motion.

¶7 The court then held a restitution hearing. Mr. Wold testified that the Acura was in "perfect condition" when it was stolen. RP at 326-27. He had purchased it for $1,000 and spent nearly $5,000 restoring it. After he got the car back from Mr. Acevedo, he tried unsuccessfully to sell it as scrap metal. A wrecking yard ultimately disposed of it for free. The court concluded that Mr. Acevedo and the car thief were jointly and severally liable for Mr. Wold's loss and ordered Mr. Acevedo to pay $6,000 in restitution.

¶8 The trial court sentenced Mr. Acevedo to 90 days of confinement and 12 months of community custody with conditions. Those conditions prohibited Mr. Acevedo from using or possessing drugs, using alcohol in excess, associating with people on probation or parole, and possessing deadly weapons. They also required that he be fully employed or in school, submit to a polygraph or urinalysis upon request, and participate in alcohol and drug treatment if recommended by his community supervision officer.

---

[1] The Hells Canyon Circuit is a judicial district consisting of Asotin, Garfield, and Columbia counties. Hells Canyon Circuit Local Rules, Order (Apr. 11, 2006).

## DISCUSSION

### DEFINITION OF "MOTOR VEHICLE"

¶9 Mr. Acevedo contends that he was denied the opportunity to argue his theory of the case because the court refused to define a "motor vehicle" for the jury as a "vehicle that is self-propelled." RCW 46.04.320; RCW 9A.04.110(28). His theory was that he bought and possessed a pile of parts, not a motor vehicle. The State responds that the court's ruling is correct because a motor vehicle, under the possession of a stolen vehicle statute, includes an inoperable car. The State, thus, maintains it was not required to show that the vehicle was self-propelled or operable.

¶10 Our review is de novo because the court's decision was based on a legal ruling. *State v. White*, 137 Wn. App. 227, 230, 152 P.3d 364 (2007).

¶11 A defendant is entitled to jury instructions that allow him to argue his theory of the case. *Id.* The instructions, as a whole, must properly instruct the jury on the applicable law. *State v. Redmond*, 150 Wn.2d 489, 493, 78 P.3d 1001 (2003). They must not mislead the jury. *Id.*

¶12 The trial court here defined the crime of possession of a stolen motor vehicle for the jury:

> A person commits the crime of possessing a stolen motor vehicle when he or she possesses a stolen motor vehicle.
>
> Possessing a stolen motor vehicle means [to] knowingly . . . receive, retain, possess, conceal, or dispose of a stolen motor vehicle knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto.

Clerk's Papers (CP) at 41 (Instruction 9). The court also instructed the jury on the elements of possession of a stolen motor vehicle:

> To convict the defendant of the crime of possessing a stolen motor vehicle, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about June 11, 2009, the defendant knowingly retained, possessed, or concealed a stolen motor vehicle;

(2) That the defendant acted with knowledge that the motor vehicle had been stolen; and

(3) That the defendant withheld or appropriated the motor vehicle to the use of someone other than the true owner or person entitled thereto; and

(4) That any of these acts occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 42 (Instruction 10).

¶13 The trial court instructed the jury that "[v]ehicle means a motor vehicle." CP at 39 (Instruction 7). It, however, refused to instruct the jury that a motor vehicle is a self-propelled vehicle because it concluded as a matter of law that a vehicle does not have to be currently operable to be a motor vehicle.

¶14 "A person is guilty of possession of a stolen vehicle if he or she [possesses] a stolen motor vehicle." RCW 9A.56.068(1) (alteration in original). In this case, " '[v]ehicle' means a 'motor vehicle' as defined in the vehicle and traffic laws." RCW 9A.04.110(28). And, in the vehicle and traffic laws, " '[m]otor vehicle' means every vehicle that is self-propelled." RCW 46.04.320.

¶15 But a motor vehicle falls under the heading of self-propelled even if it is currently incapable of self-propulsion. *State v. McGary*, 37 Wn. App. 856, 859, 683 P.2d 1125 (1984). The definition of "motor vehicle" as a self-propelled vehicle refers to the vehicle's design, mechanism, and construction, not its condition. *Id.* Interpreting the definition this way furthers the purpose of the possession of a stolen vehicle statute—to combat motor vehicle theft.

LAWS OF 2007, ch. 199, § 1(2). It would not further the statute's purpose to interpret the definition of "motor vehicle" as only an operable, self-propelled vehicle, which Mr. Acevedo urges us to do. The trial judge made the same observation:

> By yanking out a motor and a transmission, it's no longer a vehicle? The defendant can just strip the motor and vehicle [sic] out of a car and now it's no longer a motor vehicle for, ah, the enhanced charging statute of either theft or possession of a stolen vehicle as to just regular old stolen property of some other generic kind. . . . [T]he defendant should not be able to control what they get charged with.

RP at 245-46.

¶16 We read the possession of a stolen vehicle statute in a way that furthers its purpose and avoids unlikely, absurd, or strained consequences. *State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990). And to do so we conclude that the State had to prove Mr. Acevedo possessed a vehicle that was designed for self-propulsion. It did not have to prove that the vehicle was capable of self-propulsion while Mr. Acevedo possessed it. The court, then, correctly rejected Mr. Acevedo's instruction to the contrary.

RESTITUTION—VALUE OF THE CAR

¶17 Mr. Acevedo next contends that the court erred by ordering him to pay the full value of the car before it was stolen. He argues that the State did not show he stole or stripped the car and that he should, therefore, be liable for only the value of the car as he possessed it. He argues that his possession of Mr. Wold's Acura caused Mr. Wold no loss because the car was already stripped when he bought it from Manuel.

¶18 The court had authority to order restitution. RCW 9.94A.753(5). But that authority was limited to ordering restitution for those losses causally connected to Mr. Acevedo's crime. *State v. Griffith*, 164 Wn.2d 960, 965-66, 195 P.3d 506 (2008). The question is whether the loss here

is causally connected to the crime for which Mr. Acevedo was convicted. It is a question of law that we will review de novo. *State v. Johnson*, 96 Wn. App. 813, 816, 981 P.2d 25 (1999) (proper application of a statute is a question of law).

¶19 We determine whether a causal connection exists by looking at the facts underlying the defendant's crime. *Griffith*, 164 Wn.2d at 966. Losses are causally connected if the victim would not have incurred the loss but for the crime. *Id.* There is no causal connection if the loss or damage occurred before the act constituting the crime. *State v. Woods*, 90 Wn. App. 904, 909, 953 P.2d 834 (1998).

¶20 Mr. Acevedo was convicted of possessing a stolen Acura on June 11, 2009. The Acura had been stolen on December 5, 2008, which is when its front end was damaged. The police discovered Mr. Acevedo's possession of the vehicle six months after it had been stolen. Mr. Acevedo told the police he purchased the car in the condition they found it—completely stripped:

> So, I [Deputy Mark Franklin] asked [Mr. Acevedo] how it ended up in his yard—who brought it there. Was it driven there or whatever. He told me that the vehicle didn't have an engine or a transmission and I think he said it didn't have a front end when he saw it at Manuel's house. Ah, he said that it did have some usable parts that he could use for his car though. And so, Manuel agreed to deliver it to his house, which he did I think he said two to two and a half weeks later. Delivered it to his—to his house and they put it in his back yard.

RP at 206.

> Q. Did Mr. Acevedo tell Deputy Franklin, ah, about the condition of the car or anything in the car?
>
> A. Ah, he said that as—as of the car itself, how—how we found it was how he had it. Ah, Mr. Acevedo said that he, I think, wanted some body panels off of it for his car. And that the engine and transmission and the tires were all missing when he got it.

RP at 182. The Acura, then, was stripped before Mr. Acevedo bought it. No evidence shows or suggests that Mr. Acevedo

stole the car or possessed the car since it was stolen or when it was damaged. Accordingly, no evidence shows that the Acura would not be stripped "but for" Mr. Acevedo's possession of it. The State, then, failed to show a causal connection between Mr. Acevedo's crime and the damage to Mr. Wold's Acura. We reverse the restitution order and remand for further proceedings.

COMMUNITY CUSTODY CONDITIONS

¶21 Mr. Acevedo next contends that the court overstepped its authority by imposing conditions of community custody that were not related to his crime, specifically, that he (1) maintain full-time employment or education or a combination of both; (2) not use, possess, or sell drugs; (3) not associate with individuals on probation or parole; (4) submit to polygraph and/or urinalysis tests upon request; (5) not purchase, own, possess, or control any firearm or deadly weapon; and (6) participate in alcohol/drug treatment upon request. Essentially, he says alcohol, drugs, weapons, his associations with others, and his employment and education status had nothing to do with his possession of this stolen vehicle. The State responds that the requirement in RCW 9.94A.505(8) that prohibitions be "crime-related" does not apply to community custody conditions imposed under RCW 9.94A.703 and .706. It says these latter statutes authorized the conditions imposed on Mr. Acevedo.

¶22 Again, we review de novo whether the trial court had statutory authority to impose these challenged conditions of community custody. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

¶23 First, the law in effect at the time a criminal offense is committed controls the sentence. *State v. Schmidt*, 143 Wn.2d 658, 673-74, 23 P.3d 462 (2001). The date of Mr. Acevedo's crime was June 11, 2009. RCW 9.94A.703 and .706 were not effective until August 1, 2009, so they did not authorize the conditions of community custody challenged here. Mr. Acevedo was sentenced under

the first-time offender waiver sentencing option, former RCW 9.94A.650 (2006). CP at 61-62. That is the law that applies here.

¶24 Former RCW 9.94A.650(2) authorized a court to impose a term of community custody, which, *"in addition to crime-related prohibitions,"* could require that the offender do one or more of the following:

(a) Devote time to a specific employment or occupation;

(b) Undergo available outpatient treatment for up to the period specified in subsection (3) of this section, or inpatient treatment not to exceed the standard range of confinement for that offense; [or]

(c) Pursue a prescribed, secular course of study or vocational training.

(Emphasis added.)

¶25 Former RCW 9.94A.650(3)(b) provided that any term of community custody was also subject to conditions authorized in former RCW 9.94A.715(2) (2008). Former RCW 9.94A.715(2)(a) authorized the court to order that the offender "participate in rehabilitative programs or otherwise perform affirmative conduct reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community." It also provided that conditions of community custody must include "those provided for in [former] RCW 9.94A.700(4) [(2003)]" and may include "those provided for in [former] RCW 9.94A.700(5)." Former RCW 9.94A.715(2)(a). Former RCW 9.94A.700(4) mandated conditions of employment, education, and controlled substances:

(b) The offender shall work at department-approved education, employment, or community restitution, or any combination thereof; [and]

(c) The offender shall not possess or consume controlled substances except pursuant to lawfully issued prescriptions.

And former RCW 9.94A.700(5) permitted conditions related to alcohol use, associations with others, and treatment and counseling:

(b) The offender shall not have direct or indirect contact with . . . a specified class of individuals;

(c) The offender shall participate in crime-related treatment or counseling services;

(d) The offender shall not consume alcohol; or

(e) The offender shall comply with any crime-related prohibitions.

¶26 This maze of statutes authorized all of Mr. Acevedo's community custody conditions, except for the deadly weapons condition. An offender sentenced to community custody cannot own, use, or possess firearms or ammunition. Former RCW 9.94A.720(2) (2003). But no similar statute prohibits an offender from possessing all deadly weapons. The trial court, then, exceeded its authority by imposing the deadly weapons condition on Mr. Acevedo's term of community custody. And we vacate that condition.

¶27 The court, however, was authorized to order the other challenged conditions. Former RCW 9.94A.650(2)(a) and (c) and former RCW 9.94A.700(4)(b) permitted the condition that Mr. Acevedo "maintain full-time employment or education or a combination thereof throughout the duration of his probation." CP at 68. Former RCW 9.94A-.700(5)(b) allowed the trial court to prohibit Mr. Acevedo from "associat[ing] with any individuals who are on probation or parole," a specified class of individuals. CP at 68. Former RCW 9.94A.700(4)(c) authorized the condition that Mr. Acevedo "not use, possess or sell any unlawful narcotic drug, marijuana or controlled substance." CP at 68. Former RCW 9.94A.700(5)(d) authorized the condition that Mr. Acevedo not consume alcohol in excess regardless of whether alcohol contributed to his crime because subsection (5)(d) does not contain the words "crime-related" like former RCW 9.94A.700(5)(c) and (e) do. *State v. Jones*, 118 Wn. App. 199, 206-07, 76 P.3d 258 (2003). Former RCW 9.94A.650(2)(b) authorized the condition that Mr. Acevedo participate in drug or alcohol treatment if his community supervision officer ordered it because the subsection em-

powered the court to require an offender to undergo outpatient or inpatient treatment.

¶28 A plain reading of subsection (2)(b) confirms that the condition need not be crime-related. And, finally, former RCW 9.94A.715(2)(a) authorized the polygraph and urinalysis conditions to ensure Mr. Acevedo's compliance with his other conditions. *See State v. Combs,* 102 Wn. App. 949, 952, 10 P.3d 1101 (2000) (concluding that polygraph testing may be ordered to monitor offender's compliance with other conditions). The trial court, then, did not err by ordering these conditions of community custody.

¶29 We affirm the conviction but reverse the restitution order and the deadly weapons prohibition and remand for entry of a new judgment and sentence.

KULIK, C.J., and KORSMO, J., concur.