FILED
COURT OF APPEALS
DIVISION II

2014 APR -1 AM 9: 24

STATE OF WASHINGTON

BY_____ DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43741-4-II |
| Respondent, | |
| v. | |
| ROBERT LEE SANDERS, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, C.J. — Robert Lee Sanders appeals his convictions and sentences for second degree child rape and second degree child molestation. Sanders argues that (1) the State's charging document insufficiently charged Sanders, (2) the trial court exceeded its statutory authority when imposing two community custody conditions, and (3) the trial court erred by finding that Sanders was capable of paying his legal financial obligations. Because the charging document was sufficient, we affirm Sanders's convictions. We reverse one challenged community custody condition, because the trial court exceeded its statutory authority. We do not consider the trial court's finding that Sanders was able to pay his legal financial obligations, because Sanders did not raise the issue below.

No. 43741-4-II

## FACTS

A.      *Background*

Robert Lee Sanders and his ex-wife R.S. lived with two children: their son C.S., and R.S.'s daughter S.T.S.[1] Sanders alleged that the four-member family practiced co-sleeping as a type of alternative parenting. Co-sleeping is a practice in which all family members sleep in the same bed.

Sanders and R.S. separated and began divorce proceedings. During the divorce proceedings and following the divorce, S.T.S. continued to regularly visit Sanders and stay at Sanders's house. Sanders continued to practice co-sleeping with both S.T.S. and C.S.

S.T.S. told one of her friends from school that Sanders had committed sexual acts against her. Soon thereafter, S.T.S. and her friend informed their school's counselor, Regina Brown, about S.T.S.'s allegations of Sanders's sexual abuse.

The State charged Sanders with four counts. For sex acts against S.T.S. before her 12th birthday, the State charged Sanders with first degree child rape[2] and first degree child molestation.[3] For sex acts against S.T.S. after her 12th birthday, but before her 14th birthday, the State charged Sanders with second degree child rape[4] and second degree child molestation.[5]

---

[1] We use initials to protect the minor victim's privacy. *See* General Order 2011–1 of Division II, *In re The Use of Initials of Pseudonyms for Child Witnesses in Sex Crime Cases.*

[2] RCW 9A.44.073.

[3] RCW 9A.44.083.

[4] RCW 9A.44.076.

[5] RCW 9A.44.086.

2

No. 43741-4-II

B. *The Charging Document*

Sanders argues that the State's charging document contained two germane errors. First, the second degree child rape charge included a typographical error:

**COUNT III—RAPE OF A CHILD IN THE SECOND DEGREE, RCW 9A.44.076—CLASS A FELONY:**

In that the defendant, ROBERT LEE SANDERS, in the State of Washington, on or between July 5, 2010 and March 13, 2011, on a separate and distinct date than alleged in Counts I, II, and IV, did have *sexual intercourse S.T.S.*, who was at least twelve years old but less than fourteen years old, and was not married to the defendant, and the defendant was at least thirty-six months older than S.T.S.

Clerk's Papers (CP) at 2-3 (emphasis added). The State failed to include the word "with" between "sexual intercourse" and "S.T.S."

Second, the second degree child molestation charge stated:

**COUNT IV—CHILD MOLESTATION IN THE SECOND DEGREE, RCW 9A.44.086—CLASS B FELONY:**

In that the defendant, ROBERT LEE SANDERS, in the State of Washington, on or between July 5, 2010 and March 13, 2011, on a separate and distinct date than alleged in Counts I, II and III, did engage in sexual contact with S.T.S., and was at least thirty-six months older than *a person* who was at least twelve years of age but less than fourteen years of age and not married to the defendant.

CP at 3 (emphasis added). The age requirements refer to "a person" but do not refer specifically to S.T.S. Sanders did not challenge the charging document at trial.

C. *Conviction, Sentence, and Community Custody Conditions*

The jury convicted Sanders of second degree child rape and second degree child molestation. The jury acquitted Sanders of first degree child rape and failed to return a verdict on first degree child molestation. Both the second degree child rape and second degree child molestation convictions were for acts occurring between July 5, 2010 and March 13, 2011.

3

The trial court sentenced Sanders to a prison term and a term of community custody. Among the community custody conditions imposed on Sanders, the trial court required Sanders to (1) avoid using controlled substances, (2) submit to random urinalysis testing, and (3) avoid entering bars, taverns, or cocktail lounges (the bar condition). But the trial court did not prohibit or regulate Sanders's consumption of alcohol.

D.    *Legal Financial Obligations*

The trial court ordered Sanders to pay legal financial obligations (LFOs): a $500 victim penalty assessment, a $100 DNA (deoxyribonucleic acid) collection fee, and a $200 criminal filing fee. In its written order, the trial court found that Sanders had the ability to pay his LFOs:

> The court has considered the total amount owing, the defendant's past, present and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change. The court finds that the defendant has the ability or likely future ability to pay the legal financial obligations imposed herein.

CP at 6. Sanders did not object to this finding below. Sanders appeals.

ANALYSIS

I. THE CHARGING DOCUMENT

Sanders argues that the charging document insufficiently charged him because it failed to allege essential elements of second degree child rape and second degree child molestation. We disagree.

We review challenges to the sufficiency of a charging document de novo. *State v. Williams*, 162 Wn.2d 177, 182, 170 P.3d 30 (2007). But if, as here, the sufficiency of a charging document is not challenged until after the verdict, we liberally construe the charging document in favor of validity. *State v. Kjorsvik*, 117 Wn.2d 93, 102, 812 P.2d 86 (1991). All essential

elements of an alleged crime must be included in the charging document to afford defendants notice of the allegations' nature so they can properly prepare their defense. *Kjorsvik*, 117 Wn.2d at 101-02. "'Words in a charging document are read as a whole, [are] construed according to common sense, and include facts which are necessarily implied.'" *Kjorsvik*, 117 Wn.2d at 109 (quoting *State v. Nieblas–Duarte*, 55 Wn.App. 376, 380, 777 P.2d 583 (1989)).

When determining whether a charging document is sufficient, we consider two factors. First, we consider whether the crimes's necessary elements appear in any form, or can be found by fair construction, in the charging document. *Kjorsvik*, 117 Wn.2d at 105-06. It is not necessary for the statute's exact words to be included in a charging document, as long as the charging document uses words conveying the same meaning and import. *Kjorsvik*, 117 Wn.2d at 108. "[E]ven if there is an apparently missing element, it may be able to be fairly implied from language within the charging document." *Kjorsvik*, 117 Wn.2d at 104. The question is whether the charging document would reasonably apprise the defendant of the crimes charged. *Kjorsvik*, 117 Wn.2d at 109.

If we cannot find the crime's necessary elements, we presume prejudice and reverse. *State v. McCarty*, 140 Wn.2d 420, 425, 998 P.2d 296 (2000). But if we can find the necessary elements, we consider the second factor: whether the defendant suffered actual prejudice, which occurred if the inartful, vague, or ambiguous charging language deprived the defendant of notice of the crimes the State charged him with. *Kjorsvik*, 117 Wn.2d at 105-06. We hold that the State sufficiently charged Sanders with second degree child rape and second degree child molestation.

A.    *Elements of the Crimes*

1. *Second Degree Child Rape*

Sanders argues that the State insufficiently charged him with second degree child rape, because the charging document failed to charge that the defendant must have sexual intercourse *with* S.T.S., by stating "sexual intercourse S.T.S." rather than "sexual intercourse *with* S.T.S." We disagree.

The State charged Sanders with second degree child rape under RCW 9A.44.076(1), which states in part:

> A person is guilty of rape of a child in the second degree when the person has sexual intercourse with another who is at least twelve years old but less than fourteen years old.

Here, Sanders was charged with four separate sex offenses for the rape and/or molestation of S.T.S. Three of these four charges properly included the word "with" between the alleged sexual act and "S.T.S." Thus, we hold that all of the elements of second degree rape can be found by fair construction in the charging document, because the missing element (that Sanders had sexual intercourse *with* S.T.S.) can be fairly implied from the charging document's language.

2. *Second Degree Child Molestation*

Sanders argues that the State insufficiently charged him with second degree child molestation because the charge failed to include an element of the offense (S.T.S.'s age relative to the perpetrator). Sanders argues that the charging document failed to include this element by using language that created ambiguity as to whether "a person" referred to S.T.S. We disagree.

The State charged Sanders with second degree child molestation under RCW

9A.44.086(1), which states in part:

A person is guilty of child molestation in the second degree when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim.

The charge against Sanders for second degree child molestation stated as follows:

In that [Sanders] . . . did engage in sexual contact with S.T.S., and was at least thirty-six months older than *a person* who was at least twelve years of age but less than fourteen years of age and not married to the defendant.

CP at 3 (emphasis added).

Here, three of the four charges against Sanders made clear that S.T.S.'s age was the relative age at issue. Furthermore, the second degree child molestation charge discussed only two people, Sanders and S.T.S. Thus the phrase "a person" must refer to either Sanders or S.T.S. Because "a person" cannot refer to Sanders (because as the defendant, his age is being compared to "the person") it must refer to S.T.S. Thus, we hold that the elements of second degree child molestation can be found by fair construction in the charging document, because the element of S.T.S.'s relative age can be fairly implied from the language in the charging document.

B.    *Prejudice*

Because all of the necessary elements to the charges can be found by fair construction in the charging document, we consider the second factor: whether the defendant suffered actual prejudice as a result of inartful, vague, or ambiguous charging language. *Kjorsvik*, 117 Wn.2d at 105-06. No actual prejudice was present here because Sanders had full notice that he had to defend himself against the charges of second degree rape and second degree child molestation.

7

This is for three reasons. First, each of the four charges that the State filed against Sanders were for sexual acts against S.T.S. Second, three of the four charges properly included the word "with" between the alleged sexual act and S.T.S., and three of the four charges made clear that S.T.S.'s relative age was at issue in the case. Third, each charge directed Sanders to the correct statute.

We hold that the charging document did not cause Sanders actual prejudice, because the document put him on notice of the charges against which he had to defend himself. Thus, we uphold the charging document, because it sufficiently charged Sanders with second degree child rape and second degree child molestation.

## II. COMMUNITY CUSTODY CONDITIONS

Sanders argues the trial court exceeded its statutory authority by imposing two community custody conditions: the urinalysis condition and the bar condition. We affirm the urinalysis condition, but reverse the bar condition.

We generally review the trial court's imposition of statutorily authorized community custody conditions for abuse of discretion. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). And we review de novo whether the trial court had statutory authority to impose specific community custody conditions. *Armendariz*, 160 Wn.2d at 110. Because Sanders argues that the trial court exceeded its statutory authority, our review is de novo. *In re Postsentence Review of Wandell*, 175 Wn. App. 447, 451, 311 P.3d 28 (2013), *review denied*, 179 Wn.2d 1009 (2014).

The legislature is the only body with the authority to establish potential legal punishments. *State v. Zimmer*, 146 Wn. App. 405, 412-13, 190 P.3d 121 (2008). Former RCW 9.94A.703 (2009) sets out mandatory, waivable, and discretionary community custody conditions that the trial court may impose. "Mandatory" means that the trial court must impose the condition, "waivable" means that the trial court is required to impose the condition *unless* the trial court decides to waive it, and "discretionary" means that the trial court may choose whether to impose the condition. *See* Former RCW 9.94A.703.

Any conditions not expressly authorized by statute must be crime-related. Former RCW 9.94A.703(3)(f); *See State v. Jones*, 118 Wn. App. 199, 207-08, 76 P.3d 258 (2003). Conditions that do not reasonably relate to the crime's circumstances, the risk of reoffending, or public safety are unlawful *unless* explicitly permitted by statute. *See Jones*, 118 Wn. App. at 206-08. Former RCW 9.94A.030(10) (2010) defines a "crime-related prohibition" as "an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." We hold that the trial court (1) had the statutory authority to impose the urinalysis condition, but (2) exceeded its statutory authority by imposing the bar condition.

A.   *Urinalysis Condition*

Sanders argues that the trial court exceeded its statutory authority by requiring him to submit to urinalysis tests. We disagree.

Former RCW 9.94A.703(2)(c) states that it is a waivable community custody condition that the defendant "[r]efrain from possessing or consuming controlled substances except pursuant to lawfully issued prescriptions." Courts are permitted to require testing to determine

whether the defendant is meeting other statutorily authorized community custody conditions. *See State v. Acevedo*, 159 Wn. App. 221, 234, 248 P.3d 526 (2010).

Here, the trial court was statutorily authorized to order that Sanders refrain from consuming controlled substances. Former RCW 9.94A.703(2)(c). Urinalysis allows the State to monitor Sanders's compliance with the condition that he refrain from using controlled substances. *See* Former RCW 9.94A.662(1)(d) (2009). Thus, we hold that the trial court had the statutory authority to impose the urinalysis condition because it allows the State to monitor Sanders's compliance with another statutorily authorized community custody condition (refraining from consuming controlled substances). *Acevedo*, 159 Wn. App. at 234.

B.    *The Bar Condition*

Sanders argues that the trial court exceeded its statutory authority by imposing the bar condition against Sanders. The State concedes that the trial court exceeded its statutory authority by imposing the bar condition, and recommends reversal of this condition. We accept the State's concession.

The trial court did not restrict Sanders from consuming alcohol, and thus the bar condition has no connection to another statutorily authorized community custody condition imposed against Sanders (unlike the urinalysis condition).

Because there is no explicit statutory authorization for the bar condition, it must be crime-related to be valid. Former RCW 9.94A.703(3)(f). In most circumstances, children cannot enter bars, taverns, or cocktail lounges. *See* RCW 66.44.310; WAC 314-02-037. Thus, no connection exists between the child sex offenses that Sanders was convicted of and the act of

entering into bars, taverns, or cocktail lounges, and we remand for the trial court to strike the bar condition.

### III. LEGAL FINANCIAL OBLIGATIONS

Sanders argues that insufficient evidence supported the trial court's finding that he had the financial capacity to pay his LFOs, because his conviction and felony status will make it difficult for him to pay these obligations. We refuse to decide this issue under RAP 2.5, which states that we may refuse to review any claim of error that was not raised at the trial court level.

We voluntarily elected to review whether the record supported the trial court's finding that a defendant who was disabled could pay her LFOs in *State v. Bertrand*, 165 Wn. App. 393, 403-04, 267 P.3d 511 (2011). But we later rejected a similar request from another defendant in *State v. Blazina*, 174 Wn. App. 906, 911-12, 301 P.3d 492, *review granted*, 178 Wn.2d 1010 (2013). In *Blazina*, we decided that under RAP 2.5, we are not obligated to review a claim that the trial court erred by making a finding that the defendant could pay his LFOs, where the argument was not raised below. 174 Wn. App. at 911-12; *See also State v. Snapp*, 119 Wn. App. 614, 626 n.8, 82 P.3d 252 (2004) (refusing to consider the defendant's argument challenging the trial court's finding that he had the ability to pay LFOs in part because he failed to raise the issue below).

We affirm the convictions and the urinalysis condition. We refuse to review the trial

No. 43741-4-II

court's finding that Sanders can pay his LFOs. We reverse the bar condition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, C.J.

We concur:

Johanson, J.

Lee, J.

12