IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 84258-7-I |
| Respondent, | |
| v. | DIVISION ONE |
| SAUL GOMEZ HERNANDEZ, | |
| Appellant. | UNPUBLISHED OPINION |

CHUNG, J. — Saul Gomez Hernandez agreed in a plea agreement to pay restitution in an amount "to be determined" for an uncharged crime of possession of a stolen vehicle. He stipulated to facts establishing his possession of the stolen truck at issue, but not its theft. The court ordered Gomez Hernandez to pay the owner restitution for all the damage to the truck, determining that because Gomez Hernandez agreed to pay restitution, there was no "issue with causation." But even where a defendant expressly agrees in a plea agreement to pay restitution in an amount to be determined, for crimes for which they were not convicted, the State must still prove that the losses occurred and are causally connected to the uncharged crime. Because the State did not do so here as to all of the damages included in the order of restitution, we reverse the order in part and remand for recalculation of restitution.

FACTS

Gomez Hernandez was arrested in April 2021 while in possession of a 2005 F-350 pickup truck stolen from Daniel Sullivan. In October 2021, Gomez Hernandez entered into a global plea agreement under which he pleaded guilty to three counts of

possession of a stolen vehicle and one count of vehicle prowl. In exchange, the State dismissed a fifth felony charge, agreed not to file charges in three other uncharged crimes of possession of a stolen vehicle, and agreed to a residential drug offender sentencing alternative instead of a term of confinement in prison.

As part of the plea agreement, Gomez Hernandez agreed to pay restitution in an amount to be determined for the F-350 belonging to Sullivan. He also agreed to pay restitution in an amount to be determined for another one of the charged incidents and for all three of the uncharged crimes. One of the uncharged crimes was possession of a different stolen F-350 pickup that belonged to Kim Gotcher.

At the restitution hearing, Gomez Hernandez waived his appearance but was represented by his counsel. The State filed receipts documenting the $1,000 deductible Sullivan paid and the $816.45 Sullivan's insurance company paid for damage to his vehicle. The State also sought $12,605.84 in restitution for damage to Gotcher's vehicle.

The State conceded that it did not "have causation for all of the damages unless [it could] prove that they occurred while in his possession." However, the State then contended that "[Gomez Hernandez] is the person that caused the victim to lose possession of the vehicle, in which case, [it did] think [Gomez Hernandez] is responsible for restitution for any claim." The State asked the court to find by a preponderance that, "since [Gomez Hernandez] had possession of this vehicle for this very short period of time . . . , he is responsible for any damages associated with the vehicle."

In response, Gomez Hernandez stressed that he stipulated to a probable cause statement for possession, not theft. He agreed that his possession of the stolen truck meant Gotcher was entitled to restitution for towing. But Gomez Hernandez contended that all Gotcher's losses could not be "dropped on" him because the State had not proven by a preponderance how his possession, him "sitting in the car," damaged its water pump, transmission, or body work.

The court said, "[b]ecause of the plea agreement, I'm interpreting that not to raise an issue with causation - - but by agreement," and it concluded that the State met its burden as to the full amount of restitution claimed by Gotcher. The court ordered Gomez Hernandez to pay $1,000 to Sullivan, $816.45 to Sullivan's insurance company, and $12,605.84 to Gotcher. Gomez Hernandez timely appeals.

ANALYSIS

Gomez Hernandez assigns error to the amount of restitution ordered by the court. He does not dispute the amounts related to Sullivan's vehicle, but instead focuses on the amounts he was ordered to pay for damage to Gotcher's pickup, claiming the State failed to demonstrate a causal connection between his possession and the damage. The State argues that the court did not abuse its discretion because, "when restitution is ordered pursuant to a plea agreement for dismissed charges or uncharged conduct, the trial court's authority stems from the plea agreement itself." We conclude the State was required to establish that, but for Gomez Hernandez's possession of Gotcher's stolen truck, not all of the damage for which he was ordered to pay restitution would have occurred, and the State failed to do so here.

3

A court's authority to impose restitution is statutory. State v. Griffith, 164 Wn.2d 960, 965, 195 P.3d 506 (2008). Restitution "shall be ordered" whenever a defendant is convicted of an offense that results in injury or damage to or loss of property "unless extraordinary circumstances exist."[1] RCW 9.94A.753(5). The amount of restitution "shall not exceed double the amount of the offender's gain or the victim's loss." RCW 9.94A.753(3)(a); State v. Tobin, 161 Wn.2d 517, 524, 166 P.3d 1167 (2007) ("[T]he plain language of the restitution statute allows the trial judge to order restitution ranging from zero in extraordinary circumstances, up to double the offender's gain or the victim's loss.").

If a defendant disputes the amount of restitution, the State has the burden to prove the damages by a preponderance. Griffith, 164 Wn.2d at 965. The size of a restitution award is within a trial court's discretion and will not be disturbed on appeal absent a showing of abuse. Id. (internal quotation marks omitted) (internal citations omitted). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). "If the trial court's ruling is based on an erroneous view of the law or involves application of an incorrect legal analysis it necessarily abuses its discretion." Dix v. ICT Group, Inc., 160 Wn.2d 826, 833, 161 P.3d 1016 (2007). A trial court's factual findings are reviewed for substantial evidence. Griffith, 164 Wn.2d at 965.

---

[1] Recent legislation also provides that a court may waive restitution if the defendant is indigent. RCW 9.94A.753(3)(b).

The amount of restitution "shall be based on easily ascertainable damages . . . , actual expenses incurred, and lost wages." RCW 9.94A.753(3)(a). While "[r]estitution is allowed only for losses that are causally connected to a crime," State v. Kinneman, 155 Wn.2d 272, 286, 119 P.3d 350 (2005), there is an exception if the defendant " 'expressly agrees to pay restitution for crimes for which [a defendant] was not convicted.' " Griffith, 164 Wn.2d at 965-66 (quoting State v. Woods, 90 Wn. App. 904, 908, 953 P.2d 834 (1998)); RCW 9.94A.753(5). Here, Gomez Hernandez pleaded guilty and expressly agreed to pay restitution in an amount to be determined for two charged crimes and for all three of the uncharged crimes. Thus, the court could impose restitution for the charged and uncharged crimes.

Causation is a question of law reviewed de novo. State v. Acevedo, 159 Wn. App. 221, 230, 248 P.3d 526 (2010). Losses are causally connected if, "but for the charged crime," the victim would not have incurred the loss. Griffith, 164 Wn.2d at 966. The amount of a claimed loss need not be established with specific accuracy, but must be supported by substantial credible evidence. Id. at 965 (internal quotations marks omitted). Evidence supporting restitution is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture. Id. (internal quotations marks omitted). Courts may rely on a broad range of evidence, including hearsay, because the rules of evidence do not apply to sentencing hearings. ER 1101(c)(3); State v. Deskins, 180 Wn.2d 68, 83, 322 P.3d 780 (2014).

Gomez Hernandez contests the amount of restitution he was ordered to pay for damages to Gotcher's vehicle, claiming not all of the damages were related to

5

possession. The law of restitution observes a distinction between the crimes of theft and possession of stolen property. State v. Romish, 7 Wn. App. 2d 510, 515, 434 P.3d 546 (2019). A thief is responsible for all damages incurred in connection with a loss of property, even where the loss was not foreseeable or not caused by the thief personally. Id. By contrast, a possessor of stolen property is responsible only for damage actually sustained during the course of possession. Id. at 515-16 (citing Tobin, 161 Wn.2d at 524) (restitution order for "extraordinary" investigative costs affirmed despite those costs being unforeseeable to a taker of geoducks); State v. Hiett, 154 Wn.2d 560, 566, 115 P.3d 274 (2005) (affirming restitution order where non-driver took, not only possessed, a stolen vehicle); State v. Tetters, 81 Wn. App. 478, 480, 914 P.2d 784 (1996) (restitution order reversed because loss was not shown to be causally related to defendant's possession of stolen vehicle)). "[C]ulpability for possession of stolen property does not necessarily include culpability for the stealing of the property. The actual thief is guilty of a different crime." State v. Keigan C., 120 Wn. App. 604, 609, 86 P.3d 798 (2004), aff'd sub nom. State v. Hiett, 154 Wn.2d 560, 115 P.3d 274 (2005).

Gomez Hernandez stipulated to "[t]he facts set out in the certification . . . of probable cause." He "waive[d] any right to have a jury determine these facts by proof beyond a reasonable doubt." The probable cause statement relating to Gotcher's vehicle is for the crime of possessing a stolen vehicle, not theft. It states that the police found Gomez Hernandez sitting in Gotcher's truck in a business's parking lot on July 10 with the vehicle running. The statement does not allege that Gomez Hernandez stole Gotcher's pickup and contains no facts to support this conclusion. Consequently, the

6

State's argument below, that "[Gomez Hernandez] is the person that caused [Gotcher] to lose possession of the vehicle," was not supported by substantial credible evidence.

Here, the State was required to establish by a preponderance of the evidence that, but for Gomez Hernandez's possession of Gotcher's truck on July 10, the damages it sought would not have occurred. Gotcher's vehicle was stolen on July 6, and Gomez Hernandez was found in possession of the stolen vehicle on July 10. The State argues that "since [Gomez Hernandez] had possession of this vehicle for this very short period of time . . . , he is responsible for any damages associated with the vehicle." But "[t]he mere fact that property was recently stolen does not permit inferring causation." Romish, 7 Wn. App. 2d at 516. "We require more specific evidence tying the defendant's conduct to the victim's losses." Id.

The probable cause statement's stipulated facts establish that Gomez Hernandez was found in the driver's seat of a white Ford F series pickup with its engine running but without a key in the ignition. The vehicle was parked in a stall in a business's parking lot. Gomez Hernandez was able to turn off the truck when asked, and he volunteered that he did not have permission to be in it and did not know to whom it belonged. Based on its VIN,[2] police contacted the truck's owner, Gotcher, who had reported it stolen.

---

[2] Vehicle identification number.

The State's recovery specialist investigated the losses. Gotcher wrote to the recovery specialist that after the pickup was recovered on July 10,[3] the transmission was ruined and the truck would not go into gear, its engine was leaking coolant, all the truck's exterior locks were damaged, and there was extensive damage to its exterior body work. Gotcher's claimed losses included the following:

- $7,090.43 charged by Valley Auto, Truck and Fleet Service for rebuilding the truck's transmission and to replace its water pump, thermostat, and radiator;
- a $5,070.26 estimate from Banker's Auto Rebuild and Towing to repair the truck's exterior;
- $186.32 for a replacement for a missing step that attached to the truck's hitch; and
- $258.83 for damaged ignition locks, door locks, canopy top locks, door and tailgate handles and parking brake pedal release cable.

Altogether, Gotcher requested $12,605.84 in restitution, and the court granted the full amount.

The stipulated facts established that police found Gotcher's truck parked, running, with Gomez Hernandez in it, at a business's parking lot. But the probable cause statement includes no information about the condition of the vehicle on July 10, other than that Gomez Hernandez was able to turn off the vehicle without a key. Aside from pointing to the short time period between the vehicle's theft on July 6 and Gomez Hernandez's possession of it on July 10 and the damages claimed by Gotcher, the State introduced no evidence establishing that, but for Gomez Hernandez's possession

---

[3] According to Gotcher, his truck was stolen twice in 2021, once in February and again in July. In the February theft, $5,000 of electronics were stolen and the interior of the truck was damaged. Gotcher did not claim any restitution from Gomez Hernandez for damage from the February theft.

of Gotcher's truck on July 10, its transmission would have been ruined, its engine would be leaking coolant, or its after-market step missing.

Nor was there any evidence that but for Gomez Hernandez's possession of Gotcher's stolen truck on July 10 its exterior body work would have been extensively damaged. Gotcher stated in an email that $5,070.26 was "[a]n estimate for repair of damages to the exterior of the truck body from Bankers Auto Rebuild & Towing incurred while the truck was in the possession of the defendant," but elsewhere described this amount as "an estimate for the repair of all the exterior damage done to the vehicle *while it was missing*." (emphasis added) But the mere fact of the damage and Gomez Hernandez's possession of the damaged truck on July 10 does not permit an inference that his possession caused that damage. For example, in Acevedo, the defendant was convicted of possessing stolen property, a 1998 Acura, and ordered to pay restitution for its full value, $6,000. 159 Wn. App. at 226. The court reversed the restitution order and remanded for further proceedings because the evidence at trial showed the defendant came into possession of the Acura already stripped, without an engine, transmission, or front end. Id. at 230. Like in Acevedo, the State here has no evidence to show the damage to Gotcher's truck was caused by Gomez Hernandez's possession of it.

There is, however, evidence that but for Gomez Hernandez's possession of Gotcher's stolen truck, the locks would not have been damaged and required replacement. Gomez Hernandez was found sitting in the truck with its engine running, without its key, and demonstrated that he was able to turn it off without a key. It is a

9

reasonable inference that Gomez Hernandez, lacking a key, caused some damage to the truck's door locks in entering the vehicle and damaged the ignition and parking brake in starting the engine and preparing to operate the vehicle.[4]

Gomez Hernandez conceded below that but for his possession of Gotcher's truck, which would not go into gear when he was found in it, a flatbed truck would not have been required to take Gotcher's truck to a repair shop. The record shows that Gotcher "had to call AAA and have the vehicle loaded onto a flatbed truck to be delivered to a repair shop," but does not specify the amount for this service.

In addition, because Gomez Hernandez admitted that he did not have the owner's permission to be in the truck, there is substantial credible evidence that but for Gomez Hernandez's possession of it, Gotcher would not have needed for his truck to be thoroughly inspected before resuming its use. For example, in Romish, where the defendant pleaded guilty to possessing a stolen Bobcat front loader vehicle, the court determined "the record indicates the victim would have had the Bobcat serviced, regardless of how long it had been missing." Id. at 517. Thus, on remand, the trial court would have discretion to calculate the amount of restitution causally connected to the possession, including service costs and related rental fees. Id. Here, similarly, on remand, the court may calculate the amount for the inspection.

---

[4] The documentation in the appellate record does not segregate the amount for the different locks Gotcher purchased, but rather provides a combined amount for the ignition, door, and canopy top locks, as well as door handles and parking brake release cable. Regardless, once a causal connection is established, "the trial court enjoys broad discretion in determining the amount of restitution." Tobin, 161 Wn.2d at 527.

We reverse and remand for the trial court to strike the order of $12,605.84 restitution to Gotcher. On remand, the trial court should recalculate restitution to Gotcher, including only amounts for damage for which there is evidence it was caused by Gomez Hernandez's possession and excluding amounts lacking proof of causal connection to the possession, such as for damage to Gotcher's truck's transmission, engine, after-market step, and exterior generally.

_____
Chung, J.

WE CONCUR:

_____
Díaz, J.

_____
Smith, C.J.