[No. 10214-9-III.   Division Three.   September 22, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. CHRISTOPHER
K. MEAD, *Appellant*.

*Richard G. Wogsland II,* for appellant.

*Timothy J. Ohms, Prosecuting Attorney,* for respondent.

SHIELDS, C.J. — Christopher K. Mead was found guilty of a lesser included offense of second degree possession of stolen property and second degree burglary. He appeals, contending (1) the evidence is insufficient to support the burglary conviction, (2) prosecutorial and/or witness misconduct deprived him of a fair trial, and (3) the court lacked authority to order the imposed restitution. We affirm the convictions and reduce the restitution.

Between July 25 and August 29, 1988, a guitar belonging to Ron and Ruth Barnes was stolen from the basement storage area of the house being built for them in Clarkston. Mrs. Barnes located the guitar in a Lewiston, Idaho, pawnshop. The receipt was made out to Christopher Mead, a drywaller who had been working at the Barnes' house.

On September 4, 1988, a Lewiston police officer contacted Asotin County Sheriff's Deputy Jim Watkins and told him a lawn mower taken in a recent burglary of the Lewiston home of Gus and Dormay Swanberg had been seen at Mr. Mead's residence at 404 Third Street in Asotin. Deputy Watkins took Mr. Swanberg there and Mr. Swanberg identified the lawn mower as the one stolen from his home. The deputy returned to the Asotin residence that afternoon and arrested Mr. Mead on a warrant from the Tri-Cities area. After Mr. Mead was booked into jail, the deputy obtained a search warrant for Mr. Mead's residence.

Execution of the warrant on September 5 resulted in the recovery of numerous items stolen from the Swanberg residence, including a television, two television remote controls, an electric sander, broken frames that had contained a coin

collection, jewelry, and medical equipment for use with Mrs. Swanberg's pacemaker. Mr. Mead had been employed as a drywaller at the Swanberg residence by the same contractor for whom he had worked at the Barnes residence.

On January 24, 1989, Mr. Mead was charged by amended information with first degree possession of stolen property worth more than $1,500 and second degree burglary.

At his March 1989 trial, Mr. Mead moved in limine to prohibit "the State from introducing or attempting to introduce evidence of employment of the defendant by Mr. TED HAVENS at either the GUS SWANBERG or RON BARNES residence". The court ruled evidence of Mr. Mead's employment at the Barnes residence would be allowed, but not evidence of Mr. Mead's employment at the Swanberg residence. This ruling is not challenged on appeal. In opening argument, however, the prosecutor stated:

> Now, the evidence will prove as to Idaho, and you'll meet people called the Swanbergs. Mr. and Mrs. Swanberg, and they will tell you how they were having a home refurbished, remodeling construction work done on it. They will tell you how they got to know Christopher Mead, as a worker in their residence.

Mr. Mead objected and requested a curative instruction. The judge reiterated his instruction that arguments, comments and statements of counsel are not evidence. During trial the prosecutor was permitted to elicit testimony from Mr. Swanberg that Mr. Mead had been in their home and was familiar with their possessions, and had offered to buy the Swanbergs' lawn mower in August. Testimony regarding Mr. Mead's employment at the Swanbergs' was avoided. The court denied Mr. Mead's motion for mistrial.

The court also denied Mr. Mead's motion to dismiss both charges at the close of the State's case for insufficient evidence. For his defense, Mr. Mead produced two witnesses who testified regarding the value of several items admitted into evidence. Mr. Mead did not testify.

The jury found Mr. Mead not guilty of first degree possession of stolen property, but guilty of second degree posses-

sion of stolen property, and guilty of second degree burglary as charged. Following denial of Mr. Mead's posttrial motions, judgment and sentence were entered August 1, 1989. Following a restitution hearing, Mr. Mead was ordered to pay restitution of $4,740 to the Swanbergs.

The first issue is whether the burglary conviction is supported by sufficient evidence, and is controlled by well-settled law. *See State v. Green*, 94 Wn.2d 216, 616 P.2d 628 (1980). A review of the record in the light most favorable to the State provides sufficient evidence of both crimes for a jury to have found Mr. Mead guilty beyond a reasonable doubt of both offenses.

The second issue is whether the court erred by denying Mr. Mead's motion for a directed verdict and/or a new trial. Mr. Mead argues he was deprived of a fair trial by prosecutorial misconduct when the prosecutor violated the court's ruling on the motion in limine by revealing in his opening statement Mr. Mead's employment at the Swanberg residence. He also argues the testimony at trial violated the ruling in limine. To the extent the motion challenges the sufficiency of the evidence, that question is resolved in the first issue. To the extent the issue addresses alleged misconduct of the prosecutor and a prosecution witness, the record reveals a considered decision by the trial judge and the giving of a curative instruction. There was no abuse of discretion.

The third, and final, issue is whether the court's restitution order exceeded its authority. In its oral decision following the restitution hearing August 1, 1989, the court ruled:

> I am going to award [Mr. Swanberg] his $3,000. for his money and his jewelry. The $840. damage to the medical equipment and the $800. damage to the medical supplies, and pills.

The order of restitution filed August 31, 1989, listed the amount of restitution as $4,740, $100 more than the total granted at the hearing.

Mr. Mead challenges the restitution award on two bases: he argues (1) the amount is excessive because it is more than the statutory $1,500 upper limit for second degree possession of stolen property, and (2) since the crime of conviction is possession of stolen property, there is an insufficient causal connection to require restitution for items not shown to be in his possession. We do not find Mr. Mead's first argument persuasive.

In *State v. Davison*, 116 Wn.2d 917, 922, 809 P.2d 1374 (1991), the court interpreted the restitution statutes broadly, refusing to give them "an overly technical construction which would permit the defendant to escape from just punishment." It advised the restitution statutes should be interpreted to meet the declared purposes of RCW 9.94A.010, the Sentencing Reform Act of 1981, when it applies. *Davison*, at 920. The size of the award is within the court's discretion and will not be disturbed on appeal absent a showing of abuse. *Davison*, at 919-20.

In *State v. Selland*, 54 Wn. App. 122, 124, 772 P.2d 534, *review denied*, 113 Wn.2d 1011 (1989), the court refused to limit restitution to the amount in the statutory definition of the crime charged.[1] Restitution provides reparation to victims and helps to prevent future offenses. In *Selland*, at 125 (quoting *State v. Rogers*, 30 Wn. App. 653, 657, 638 P.2d 89 (1981)) the court observed:

> "If the victims of the crime have sustained a loss greater than the value shown in support of the conviction, it does not serve the objective of reparation to those victims to limit restitution to the lesser amount."

The court did not abuse its discretion by ordering restitution in an amount more than the statutory upper limit for the crime of conviction.

However, as Mr. Mead points out, restitution may only be awarded for damages resulting from the crime of conviction,

---

[1] In *State v. Tindal*, 50 Wn. App. 401, 404, 748 P.2d 695 (1988), the court also held RCW 9A.20.030, which provides for restitution "in lieu of" a fine, does not limit the amount of restitution to the maximum fine allowed for the crime charged.

which in this case is possession of stolen property. He argues:

> Restitution for coin collections, the returned medical equipment, and the medical items which were rummaged through in the State of Idaho was inappropriate and outside the scope of authority of the court and the statute in question.

Mr. Mead is mistaken about the coin collection and medical equipment, but correct about the medical supplies.

At trial, it was proved Mr. Mead possessed the broken frames and glass in which the coin collection had been displayed. However, the Swanbergs were deprived of the coins as well as the frames and glass. It is reasonable to infer Mr. Mead's possession of the stolen display cases resulted in the Swanbergs' loss of the coins. Although the Swanbergs were not permanently deprived of the medical equipment for which restitution was ordered, because it was returned to them after being recovered, the integrity of the equipment was compromised by his possession of it. It had to be replaced or recalibrated.

■ Mr. Swanberg's restitution hearing testimony placed values on the coins and medical equipment of $3,000 and $840 to $850, respectively. The amount need only be supported by evidence providing a reasonable basis for the court's award. *State v. Mark*, 36 Wn. App. 428, 434, 675 P.2d 1250 (1984); *State v. Bush*, 34 Wn. App. 121, 123, 659 P.2d 1127, *review denied*, 99 Wn.2d 1017 (1983). Restitution of $3,840 is supported by the record.[2]

■ Mr. Swanberg testified the medical supplies were ransacked and damaged in his home, but not taken. Although the damage could be linked to the offense of burglary, Mr. Mead was not, and could not be, charged or convicted of that crime in Washington as to the Swanbergs. His possession of stolen property occurred after a burglary and the damage to the medical supplies cannot be attributed to his

---

[2]The record does not reflect whether the court considered doubling this amount under RCW 9.94A.142(1) and neither party addresses this question. *See* D. Boerner, *Sentencing in Washington* § 4.8 (1985).

492

offense. *See State v. Hartwell,* 38 Wn. App. 135, 140-41, 684 P.2d 778 (1984).

Mr. Mead's convictions are affirmed. The restitution award is reduced to $3,840.

THOMPSON and SWEENEY, JJ., concur.