IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31972-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KEENAN WALTER ROSS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Keenan Ross appeals $54,580 imposed as restitution for a burglary of a cold storage warehouse. The substantial restitution ordered reflected the cost of repairing refrigeration equipment and its controls and sensors following the close cutting and stripping of all its copper tubing and wires. Mr. Ross argues that because none of the stolen copper was found when he was apprehended at the scene of the burglary, the State failed to prove a causal connection between his crime and the damage caused by theft of the copper.

The underlying facts of the burglary charge, established by a preponderance of the evidence, was of a burglary that had likely taken place over more than one night. Substantial evidence supports the sentencing court's implicit finding that "but for" Mr. Ross's burglary, the extensive damage to the refrigeration equipment would not have occurred. We affirm.

FACTS AND PROCEDURAL BACKGROUND

Over a nine month period in 2012, Keenan Ross was caught committing two crimes in Yakima County, the charges for which he later resolved in a global plea agreement leading to this appeal.

In the first case, Yakima Superior Court Cause No. 12-1-00295-4, Sergeant Guillermo Rodriguez was conducting an early morning patrol (around 2:00 to 3:00 a.m.) that included checking on city-owned property on Crusher Canyon Road on February 23, 2012, when he noticed a small red pickup parked in a ditch in the vicinity of an unused cold storage warehouse. No one was in the truck. He ran its license plate number to confirm that it had not been reported stolen. After looking around the area and not noticing anything out of order, he assumed that someone broke down and left the truck behind.

The next night, conducting the same patrol at approximately the same time, the sergeant saw the red pickup in the same general area but in a different location. This time the truck was "backed up into the weeds . . . within a few hundred . . . yards from the warehouse." Report of Proceedings (RP) at 45. On completing his patrol of the area and returning to town, he noticed that the pickup had been moved again and was now parked next to the warehouse, where two men—one of them Mr. Ross—were in the process of loading a condenser unit into the truck.

2

Selah police contacted Danny Garner, the owner of the warehouse, who confirmed that the removal of equipment was unauthorized and drove to the warehouse to assess the extent of the crime. He saw that padlocks had been cut off doors to the two rooms where compressors were stored, that all of the copper lines for the Freon had been severed and removed, that the electrical system had been stripped of all its heavy wiring, that the control panels and control wiring had all been severed for their copper wiring, that both compressors had been unbolted from the floor in apparent preparation for stealing them, that the condenser unit that Mr. Ross and his partner in crime were about to load into the truck had been taken from the end of the building, and that a second condenser unit from the roof was missing. Mr. Ross was charged with second degree burglary and attempted first degree theft.

In the second case (this one) a customer of a Yakima antiques shop saw Mr. Ross offer to sell the proprietors some antique beer paraphernalia that the customer was sure had been stolen from a friend's home in a burglary two weeks earlier. The customer called police, and officers dispatched to the store questioned Mr. Ross, who provided inconsistent explanations as to how he acquired the items. Officers e-mailed pictures of the items to the victim of the burglary, who confirmed they were hers. Mr. Ross was charged with first degree trafficking in stolen property and second degree possession of stolen property.

Several months after this second crime, Mr. Ross reached a global plea agreement in this case, under which he agreed to enter an *Alford*[1] plea to a charge of first degree trafficking in stolen property for the attempted sale of the stolen beer paraphernalia and to pay restitution for the warehouse burglary in case no. 12-1-00295-4. In exchange, the State dismissed the possession of stolen property charge in this case and dismissed all charges against Mr. Ross in the earlier warehouse burglary case.

After the *Alford* plea was entered, a restitution hearing was conducted. The State called Sergeant Rodriguez to testify to his observations and actions on February 23 and 24 and Mr. Garner to testify to the damage to the equipment in the warehouse.

Mr. Garner testified that he had owned the warehouse for about 10 years. The last time he had been to the property before receiving the call from Selah police on February 24 was only two days earlier, on February 22, and nothing was missing or damaged at that time. He described the damage that took place sometime between February 22 and 24, and provided estimates of the cost of repair or replacement as follows:

- The padlocks on doors to the compressor rooms that had been cut and were missing were Master Locks, whose replacement cost would be $40 each,

- He had obtained an estimate from RECO Refrigeration that the cost of repairing the cooling systems would be $40,000 and the cost of replacement would be "[u]pwards of $70 grand" for "just the mechanical portions,"

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

- He had obtained an estimate from Arrow Electric that the cost of repairing the electrical wiring would be between $15,000 and $18,000, and

- He believed that $4,000 to $5,000 worth of Freon had been lost when the copper tubing was cut.

RP at 12, 29, 31.

The defense thoroughly cross-examined Mr. Garner and Sergeant Guillermo. Among other challenges to the State's proof, Mr. Ross's lawyer argued that the State had not proved, "as they need to[,] that Mr. Ross was the person that removed the equipment that was missing and not found on the night of February 24th," explaining that the defense had specifically requested a restitution hearing "because when you looked at the materials that were found in and around the truck it didn't come anywhere close to what [they're] claiming as damages." RP at 49, 51.

After considering supplemental briefing requested from the parties, the sentencing court reconvened the parties to announce its decision to award restitution of $54,580, based on the repair estimates obtained by Mr. Garner. It refused to award any amount for the Freon, finding the State's evidence insufficient. Following the entry of findings and conclusions prepared by the State, Mr. Ross appeals.

## ANALYSIS

Mr. Ross argues that because the State presented no evidence that any copper wire or tubing were found when Mr. Ross was apprehended, the restitution award included

5

damages that were caused by acts that preceded the crime charged and were not causally connected with it. At most, he argues, the State established that restitution was owed for the value of the two padlocks that had been cut.

A trial court's authority to order restitution is derived entirely from statute. *State v. Tobin*, 161 Wn.2d 517, 523, 166 P.3d 1167 (2007). Under RCW 9.94A.753(5), restitution "shall be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property," unless "extraordinary circumstances" make restitution inappropriate. The statute authorizes a court to order restitution up to twice the amount of the victim's loss resulting from the crime. RCW 9.94A.753(3).

Under RCW 9.94A.753(3), restitution must be based on "easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury." But while the damages must be "easily ascertainable," the "amount of harm or loss 'need not be established with specific accuracy.'" *State v. Kinneman*, 155 Wn.2d 272, 285, 119 P.3d 350 (2005) (quoting *State v. Hughes*, 154 Wn.2d 118, 154, 110 P.3d 192 (2005), *overruled on other grounds by Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006)). Rather, "[e]vidence supporting restitution 'is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture.'" *State v. Griffith*, 164 Wn.2d 960, 965, 195 P.3d 506 (2008) (quoting *Hughes*, 154 Wn.2d

6

at 154). To support an order for restitution, the State must prove a causal connection between the crime charged and the victim's loss by a preponderance of the evidence. *Hughes*, 154 Wn.2d at 155.

Restitution is only allowed for losses "causally connected" to the crime charged. *Kinneman*, 155 Wn.2d at 286; *State v. Enstone*, 89 Wn. App. 882, 886, 951 P.2d 309 (1998), *aff'd*, 137 Wn.2d 675, 974 P.2d 828 (1999) (there must be a causal connection "between the crime and the injuries for which compensation is sought"). "Losses are causally connected if, but for the charged crime, the victim would not have incurred the loss." *Griffith*, 164 Wn.2d at 966.

Because restitution is limited to losses incurred "'as a result of the precise offense charged,'"[2] the general rule is that "[a] defendant may not be required to pay restitution beyond the crime charged or for other uncharged offenses." *State v. Johnson*, 69 Wn. App. 189, 191, 847 P.2d 960 (1993). In other words, restitution may not be imposed "'based on the defendant's "general scheme" or acts "connected with" the crime charged, when those acts are not part of the charge.'" *Woods*, 90 Wn. App. at 907-08 (quoting *State v. Miszak*, 69 Wn. App. 426, 428, 848 P.2d 1329 (1993)).

An exception to this rule applies where a defendant pleads guilty and "'expressly agrees'" as part of the plea bargaining process "'to pay restitution for crimes for which

---

[2] *State v. Woods*, 90 Wn. App. 904, 907, 953 P.2d 834 (1998) (quoting *State v. Mizak*, 69 Wn. App. 426, 428, 848 P.2d 1329 (1993)).

[she] was not convicted.'" *Id.* at 908 (quoting *Johnson*, 69 Wn. App. at 191); RCW 9.94A.753(5) (providing that restitution shall be ordered "if the offender pleads guilty to a lesser offense or fewer offenses and agrees with the prosecutor's recommendation that the offender be required to pay restitution to a victim of an offense or offenses which are not prosecuted pursuant to a plea agreement"). Mr. Ross does not dispute that as part of the global plea agreement, he agreed to pay restitution for the crimes charged in case no. 12-1-00295-4.

Subject to the foregoing limitations, the trial court has broad discretion in deciding to impose restitution and the amount thereof. *State v. Woods*, 90 Wn. App. at 906; *Hughes*, 154 Wn.2d at 153. Accordingly, a trial court's order of restitution will not be disturbed on appeal unless it is "'manifestly unreasonable or the sentencing court exercised its discretion on untenable grounds or for untenable reasons.'" *Woods*, 90 Wn. App. at 906 (quoting *State v. Hunotte*, 69 Wn. App. 670, 674, 851 P.2d 694 (1993)).

Mr. Ross likens this case to *Woods* and *State v. Acevedo*, 159 Wn. App. 221, 248 P.3d 526 (2010), in which restitution orders were reversed as including losses not causally related to the crime charged. In *Woods*, the defendant was charged with and pleaded guilty to possessing a stolen truck on September 4, 1995. 90 Wn. App. at 908. She was ordered to pay restitution for personal property of the victim that was stolen from the truck in August. While the State presented evidence that Ms. Woods actually stole the truck on August 17 and may well have stolen the personal property, the

8

appellate court reversed the restitution ordered, reasoning that because Ms. Woods had been charged only with possession of stolen property, not theft—and in September, not August—she could not be ordered to pay restitution for the missing personal property. *Id.* at 908-09. "Restitution for loss beyond the scope of the crime charged is properly awardable only when the defendant enters into an express agreement, as part of the plea bargain process, to make such restitution"—and Ms. Woods had not entered into any such agreement. *Id.* at 909.

Similarly, in *Acevedo*, the defendant was convicted of possessing a stolen Acura some six months after it had been stolen, involved in a wreck, stripped, and then sold to Mr. Acevedo for parts. 159 Wn. App. at 225. Although this court rejected his argument that he had purchased and possessed stolen "parts," not a stolen "motor vehicle," it agreed with Mr. Acevedo that the amount of restitution ordered had to be based on the value of the Acura in Mr. Acevedo's hands, not the value at the time it was originally stolen. Because "no evidence show[ed] that the Acura would not [have been] stripped 'but for' Mr. Acevedo's possession of it[,] the State . . . failed to show a causal connection between Mr. Acevedo's crime and the damage." 159 Wn. App. at 231. *But cf. State v. Mead*, 67 Wn. App. 486, 491, 836 P.2d 257 (1992) (holding that it was "reasonable to infer" from evidence of defendant's possession of stolen cases within which victim's coin collection had been housed that there was a causal connection with the victim's loss of the coins).

9

Mr. Ross's argument would support a substantially smaller restitution amount if he had only been charged with the attempted theft of the air conditioner unit and/or pump compressor and only "on February 24." In that case, he could more reasonably argue that other, earlier criminal acts on his part proved by the State were, at best, part of a general scheme or act that was not a part of the charge.

But Mr. Ross was also charged with second degree burglary under RCW 9A.52.030(1) and RCW 9A.08.020. The information alleged:

> On or about February 24, 2012 . . . acting as a principal or an accomplice to another participant in the crime[,] you or another participant in the crime, with intent to commit a crime against a person or property therein, entered or remained unlawfully in a building located at 1580 Crusher Canyon Road, Selah, Washington, the property of Danny Joe Garner.

CP at 61.

In assessing the required causal connection between the charged crime and the losses requested as restitution, we look at the underlying facts of the charged crime, not the generally defined elements of the crime. *State v. Hiett*, 154 Wn.2d 560, 565, 115 P.3d 274 (2005). Here, Sergeant Rodriguez's testimony provided substantial evidence that Mr. Ross's and his partner's burglary occurred over more than one evening. While it would have strengthened proof of the restitution damages if the stolen copper had been found at the scene or traced to Mr. Ross, the standard of proof required is only preponderance of the evidence. Applying a preponderance standard, the sentencing court

10

No. 31972-5-III
*State v. Ross*

could readily find that all the damage identified by Mr. Garner occurred during Mr. Ross's and his partner's burglary of the warehouse. Applying the required "but for" analysis, it could reasonably find that had Mr. Ross and his partner not committed the crime charged, the loss would not have occurred.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, C.J.

WE CONCUR:

Brown, J.                          Korsmo, J.

11