IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31583-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL L. LONG, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Michael Long pled guilty to possession of a stolen vehicle. We

suspect he participated in damaging the stolen car while he possessed it. Nevertheless,

the State of Washington charged Long with possession only during a three day window,

and someone could have purloined the car days earlier. Rulings by our judicial

forebearers do not permit an inference that Long harmed the car. Therefore, we reverse

the trial court order imposing restitution on Long for damage to the stolen vehicle. We

also remand for an individualized determination of whether Michael Long will have the

financial capability to pay legal financial obligations.

FACTS

In early June 2012, victim Adrian Espinoza took his 2005 white Dodge Neon to Wenatchee's Town Dodge for diagnosis and repair of an electrical problem. A mechanic at the dealership diagnosed a failed power control module. A power control module functions as a motor vehicle's central processing computer and controls scores of functions in the engine, electrical system, and transmission. The mechanic removed the module from the car and shipped the device to Seattle so that a replacement module could be programmed for Espinoza's Neon. Espinoza left his car at Town Dodge while awaiting the module. Removal of the power control module disabled the Neon.

On July 6, 2012, Adrian Espinoza received the replacement power control module in the mail and returned to the dealership with the part. Town Dodge then discovered Espinoza's vehicle missing. The dealership kept one key to the car, and Espinoza retained the only other key.

Also on July 6, 2012, in another Wenatchee neighborhood, Tyler McGrew espied Michael Long driving through McGrew's back alley in a white Dodge Neon. The date of this sighting is critical to this appeal. McGrew knew Long, and the two had visited the previous night. McGrew, during a separate investigation, reported Long's use of the Neon to law enforcement.

On July 8, 2012, Wenatchee Police Officer Brian Miller responded to friends of Adrian Espinoza who claimed to have located Espinoza's stolen Dodge Neon. The

license plate on the discovered Neon was mounted in an unusual fashion, and the license number did not match Espinoza's vehicle license plate. The license plate number matched the number of a car plate owned by Chantelle Holbrook. Holbrook is an acquaintance of Michael Long. Someone cleverly replaced the Neon's vehicle identification number on the dash with a handwritten paper containing the endearing mantra: "FUCK DA POLICE." Clerk's Papers (CP) at 135. Officer Miller entered the car by use of a slim jim and found the interior VIN number, which confirmed that the Neon belonged to Espinoza. Espinoza arrived at the location of the car and identified the Neon as his vehicle.

Adrian Espinoza found the condition of his Dodge Neon changed since early June when he left the car at Town Dodge. Espinoza found a Jeep brand key and new battery in the Neon. Someone broke or drilled the driver side handle, tampered with the ignition, painted a previously black square on the hood white, and removed the stereo.

Witnesses in the neighborhood of the found Dodge Neon identified Michael Long as having driven the Dodge Neon earlier on July 8. Julie Bonifer, an associate of Michael Long, admitted driving him to "a house up north" to retrieve the Dodge Neon during the evening of July 7 or 8. CP at 137.

Officer Brian Miller knew Michael Long as "HOTROD" Long. Miller earlier saw a picture posted to a Facebook page and captioned "F¥ck da police." CP at 139. In the photograph, a spelling challenged Long, with a raised middle finger, stood next to a

3

Wenatchee Police Department sign.

Michael Long admitted to law enforcement that he works on cars and sometimes assists friends in repairing and maintaining cars. When asked if he worked on the stolen Dodge Neon, Long replied: "I don't think so. I work on so many different cars though it's hard to keep track." CP at 154.

## PROCEDURE

The State of Washington charged Michael Long with possession of a stolen vehicle and two unrelated crimes: bail jumping and possession of stolen property in the second degree. Pursuant to a plea agreement, Long pled guilty to all three charges. The statement of defendant on plea of guilty read that restitution would be determined at a later date. In the statement, Michael Long agreed that "between July 6 and July 8, 2012, in Chelan County, WA, I knowingly and unlawfully possessed a stolen vehicle belonging to Adrian Espinoza." CP at 80. During a change in plea hearing, Long confirmed that, between July 6 and July 8, 2012, he knowingly possessed a stolen vehicle belonging to Adrian Espinosa.

At the change of plea hearing, the trial court sentenced Michael Long to a mixture of confinement and community custody in accordance with the plea deal. The court assessed legal financial obligations and scheduled a later restitution hearing. The trial court ordered payment of a $500 victim assessment fee, $200 criminal filing fee, $450 court appointed attorney fees, $100 DNA (deoxyribonucleic acid) collection fee, and a

4

$100 warrant fee. The court did not inquire about Long's ability to pay financial

obligations, but checked a box next to boilerplate language stating: "The defendant has

the ability or likely future ability to pay the legal financial obligations imposed herein."

CP at 84.

At the later restitution hearing, Michael Long and the State stipulated to $1,500.00

in damages for Long's conviction for possession of stolen property other than the Dodge

Neon. The parties disputed the restitution amount for possession of the stolen Neon. A

restitution report requested $500.00 for Adrian Espinosa and $11,219.35 for Country

Preferred Insurance Company (Country Preferred), Espinosa's car insurer. The insurer

paid for damage to the car wrecked after someone purloined the Neon from the Town

Dodge lot. Espinosa paid $500.00 out of his pocket because of an insurance deductible.

The State included a letter from Country Preferred as part of the restitution report.

The letter claimed the stolen vehicle as a total loss and detailed the "claim payments" as

follows:

> $7,6141.36 - paid to Wenatchee Valley FCU on 09/20/12 (this is the loan payoff amount)
> $4,804.13 - paid to the Insureds for the balance of the total loss settlement not paid to the lender.
> $800.00 - paid to Enterprise Rental (for replacement vehicle rental)
> $726.35 - paid to the Insured as reimbursement for additional rental expenses.
> $1,275.00 - paid to A&D Forensic Analysis (additional explanation follows)
> $150.51- travel expenses to/from Federal Way to Wenatchee (explanation follows)

5

$15,367.35 - TOTAL CLAIM PAYMENTS
($4,148.00) Salvage recovery after sale of recovered vehicle
**$11,219.35 TOTAL RESTITUTION REQUESTED.**

CP at 102

During the restitution hearing, Michael Long argued that the State had no evidence that the asserted damages to the Dodge Neon occurred during Michael Long's unlawful possession. He also contended that the claimed amount was speculative. The trial court commented that "11,000 . . . seems high." Report of Proceedings (RP) at 29. Nevertheless, because Long offered no contrary valuation evidence, the trial court granted restitution for the full amount requested of $11,719.35.

The trial court issued findings of fact and conclusions of law after the restitution hearing. The trial court found, in part:

> 4. The Defendant alleged that there is no causal connection between his possession of the stolen vehicle and the damages to the vehicle so that restitution is inappropriate.
> 5. The court reviewed and finds that the police reports, which are adopted herein, provide the factual basis to establish a causal connection between the Defendant's possession of the stolen vehicle and the damages to the vehicle so that restitution is appropriate.

CP at 158. The trial court also entered conclusions of law that included:

> 2. The underlying facts in the police reports establish a causal connection between the Defendant's possession of the stolen vehicle and the damages done to the vehicle so that restitution is appropriate.
> 3. "But for" the Defendant's possession of the stolen vehicle, the damages would not have occurred to the vehicle.
> . . . .
> 6. The court orders restitution as requested in the amount of

6

$1,500.00 to C&O Nursery, $500.00 to Adrian Espinosa, and $11,219.35 to Country Preferred Insurance Company, for a total restitution order of $13,219.35.

CP at 159.

LAW AND ANALYSIS

Restitution

Michael Long impliedly contends that the trial court awarded an excessive sum of restitution for harm to the Dodge Neon. Since we vacate the entire restitution award for the stolen car, we need not and do not address this argument.

The parties do not dispute the facts on appeal so much as wrangle over what inferences a court may draw from the facts. The State of Washington did not charge Michael Long with stealing or abetting the theft of Adrian Espinoza's Dodge Neon. The court heard no testimony as to the date someone stole the car, although the date of the theft could be as early as the beginning days of June. The State submitted no evidence as to when the Neon suffered the damage for which the State sought restitution. One with experience in car maintenance could conclude that some of the damage occurred at the time of the theft since the car was inoperable without modifications. Since Michael Long maintained and repaired cars, one might conclude that he participated in retrofitting the Neon.

Although no evidence confirms that Michael Long first took possession on July 6, 2012, the State's evidence did not place Long in possession of the car until July 6. The

State's information charged Long with possession only on the three days between July 6 and July 8 inclusive. Long pled guilty to possession only for the three days. No direct evidence established that damage to the car occurred between July 6 and the retaking of the car on July 8.

Michael Long argues that the State cannot prove that the loss was directly attributable to the charged offense and thus the trial court erred in imposing restitution. The State replies that it presented substantial evidence of a causal connection between Long's brief and sole possession of the stolen vehicle and the damages that it sustained. Based on numerous Washington decisions, we agree with Long.

One goal of restitution is to require the defendant to face the consequences of his conduct. *State v. Enstone*, 137 Wn.2d 675, 680, 974 P.2d 828 (1999); *State v. Dauenhauer*, 103 Wn. App. 373, 378, 12 P.3d 661 (2000). Restitution is also designed to promote respect for the law by providing punishment that is just. *State v. Davison*, 116 Wn.2d 917, 922, 809 P.2d 1374 (1991). Restitution is both punitive and compensatory in nature. *State v. Kinneman*, 155 Wn.2d 272, 279-80, 119 P.3d 350 (2005). Restitution provides reparation to victims and helps to prevent future offenses. *State v. Mead*, 67 Wn. App. 486, 490, 836 P.2d 257 (1992). Nevertheless, the law imposes limits on when a court may order restitution.

The authority to impose restitution is not an inherent power of the court, but is derived from statute. *State v. Gray*, 174 Wn.2d 920, 924, 280 P.3d 1110 (2012); *State v.*

8

*Davison*, 116 Wn.2d at 919. A number of statutes address restitution under varying circumstances. The controlling statute here is RCW 9.94A.753. Subsection 5 of the statute reads:

> Restitution shall be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property or as provided in subsection (6) of this section unless extraordinary circumstances exist which make restitution inappropriate in the court's judgment and the court sets forth such circumstances in the record. In addition, restitution shall be ordered to pay for an injury, loss, or damage if the offender pleads guilty to a lesser offense or fewer offenses and agrees with the prosecutor's recommendation that the offender be required to pay restitution to a victim of an offense or offenses which are not prosecuted pursuant to a plea agreement.

RCW 9.94A.753(5).

When a defendant disputes facts relevant to the determination of restitution, the State must prove the amount by a preponderance of the evidence at an evidentiary hearing. *State v. Hughes*, 154 Wn.2d 118, 154, 110 P.3d 192 (2005), *abrogated on other grounds by Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006); *State v. Dedonado*, 99 Wn. App. 251, 256, 991 P.2d 1261 (2000). A trial court's order of restitution is reviewed for abuse of discretion, however incorrect legal analysis or an error of law can constitute abuse of discretion. *State v. Tobin*, 161 Wn.2d 517, 523, 166 P.3d 1167 (2007). Affording discretion often entails a reviewing court accepting the reasonable inferences drawn from the facts by the trial court. Legal precedence, however, narrows the inferences that the trial court may extract in this setting.

Case law expands on the language of RCW 9.94A.753(5). A trial court exceeds its statutory authority in ordering restitution when the loss suffered is not causally related to the offense committed by the defendant. *State v. Woods*, 90 Wn. App. 904, 907, 953 P.2d 834 (1998); *State v. Vinyard*, 50 Wn. App. 888, 891, 751 P.2d 339 (1988). Imposition of restitution must be based on a causal connection between the crime charged and the victim's damages. *Tobin*, 161 Wn.2d at 523; *State v. Osborne*, 140 Wn. App. 38, 42, 163 P.3d 799 (2007); *State v. Woods*, 90 Wn. App. at 907; *State v. Bunner*, 86 Wn. App. 158, 160, 936 P.2d 419 (1997). Restitution for loss beyond the scope of the crime charged is properly awardable only when the defendant enters into an express agreement, as part of the plea bargain process, to make such restitution. *State v. Woods*, 90 Wn. App. at 909. Otherwise, a trial court's discretion in awarding restitution is limited to the "precise offense" charged. *Woods*, 90 Wn. App. at 907; *State v. Harrington*, 56 Wn. App. 176, 179, 782 P.2d 1101 (1989); *State v. Ashley*, 40 Wn. App. 877, 878-79, 700 P.2d 1207 (1985). Although these rules speak in terms of the crime charged, the cases limit restitution to damages resulting from the crime of conviction. *State v. Mead*, 67 Wn. App. at 490 (1992).

Causation is proved by a "but for" inquiry. *Tobin*, 161 Wn.2d at 524. Restitution is allowed only for losses that are causally connected to a crime, and may not be imposed for a general scheme, or acts connected with the crime charged. *State v. Kinneman*, 155 Wn.2d at 286 (2005). Restitution may not be based on acts connected with the crime

charged, when those acts are not part of the charge. *State v. Harrington*, 56 Wn. App. at 179; *State v. Harwell*, 38 Wn. App. 135, 141, 684 P.2d 778 (1984), *overruled on other grounds by State v. Krall*, 125 Wn.2d 146, 881 P.2d 1040 (1994). Going further, under one of our decisions, restitution can be based only on damage caused during the dates for which the State charges the defendant with a crime. *State v. Woods*, 90 Wn. App. at 909 (1998).

Since Michael Long's prosecution was resolved by a plea, the charge to which Long pled controls the extent of restitution. Long pled guilty to possession of a stolen vehicle, and the State charged Long with possession during only three days. Thus, the State must show that the damage to the Neon was caused by Long's custody of the car during that narrow window of time. The State cannot establish this factual proposition.

A principle of law controlling this appeal's outcome is: loss or damage occurring before the act constituting the crime cannot be causally connected. *State v. Woods*, 90 Wn. App. at 909. All of the damage to the Dodge Neon could have occurred before July 6. Although the State asks us to assume that someone stole the Neon shortly before July 6, the theft could have occurred as early as June. Even if the car was stolen on July 5, Michael Long did not plead to possessing the car on that day. If the State wished restitution for all damages to the car, the State needed to charge and convict Long of theft.

One might argue that someone stole the Dodge Neon with the expectation that

Michael Long or another would take possession of the car, such that Long's possession of the car was a procuring cause of the theft thereby rendering him liable for all damage beginning with the theft. The State does not assert this argument, and case law would probably reject such a contention.

*State v. Acevedo*, 159 Wn. App. 221, 248 P.3d 526 (2010), *State v. Woods*, 90 Wn. App. 904 (1998), and *State v. Tetters*, 81 Wn. App. 478, 914 P.2d 784 (1996) control this appeal. In *Acevedo*, someone stole the victim's 1998 Acura from an auto body shop. Miguel Acevedo paid $200 for the Acura with no engine or transmission in order to salvage parts for use in his own vehicle. Six months after the Acura was stolen, police discovered Acevedo used the car for parts. The jury convicted Acevedo of possession of a stolen vehicle. During the restitution hearing, the victim claimed $6,000 in damages because the vehicle was in perfect condition at the time of the theft. The trial court awarded $6,000 in restitution, but this court reversed. No evidence showed that the Acura underwent stripping during Acevedo's possession.

In *State v. Woods*, Melinda Woods pled guilty to possessing a stolen motor vehicle on September 4, 1995. At the restitution hearing, the State presented a letter Woods wrote in jail, in which letter she admitted to stealing the truck on August 17. The trial court awarded restitution for the amount of personal property located in the truck at the time of the thievery. We reversed since the State did not charge or convict Woods of theft. Although evidence suggested she may have possessed the truck from the date of

the taking, she pled to possession of the truck during only one day. The personal objects could have been taken from the vehicle between August 17 and September 4. Although evidence suggested that Woods held possession of the truck since August 17, she only pled to possession on September 4. Under *Woods*, Michael Long could not be ordered to pay restitution, even if evidence suggested he stole the car by retrofitting it, since his conviction was limited to possession after the taking.

In *State v. Tetters*, 81 Wn. App. 478 (1996), Jesse Tetters also pled guilty to possessing a stolen vehicle. The trial court awarded restitution against Tetters for all damage to the car sustained during the time that its owner lacked possession and for the value of the personal property taken from the car. We reversed. No evidence suggested that Tetters possessed the car either from the time someone stole it or when someone removed the personal property from the car.

*State v. Harrington*, 56 Wn. App. 176, 782 P.2d 1101 (1989) presents those facts lacking in our case on appeal and illustrates the need to deny restitution against Michael Long. Richard Harrington pled guilty to possessing a stolen car. In pleading guilty, he admitted to stealing the car and the car remaining in his possession until its owner confronted him. We affirmed restitution for all damages to the car since Harrington admitted illegal possession of the vehicle for the entire period during which the victim lacked custody of the car. Long did not concede possession for the window of time during which the Neon was off the lot of Town Dodge.

13

Legal Financial Obligations

As the State concedes, the trial court erred when it concluded that Michael Long had the ability or likely future ability to pay discretionary legal financial obligations imposed in the judgment and sentence without first making an individualized inquiry into his current and future ability to pay. The discretionary obligations include $450 attorney fees and a $100 warrant fee. Long did not raise the issue of financial obligations at sentencing.

In *State v. Blazina*, 182 Wn.2d 827, 834, 344 P.3d 680 (2015), our Supreme Court held that trial courts must make an individualized inquiry into the defendant's current and future ability to pay before imposing discretionary legal financial obligations. Checking the box next to boilerplate language in the judgment and sentence is insufficient. The *Blazina* court also ruled that the ability to pay financial obligations may be raised for the first time on appeal at the discretion of the appellate court.

This Court of Appeals division sometimes declines review of legal financial obligations if the amount falls below $750. Nevertheless, since we vacate the order of restitution in this appeal, we exercise our discretion to remand for a hearing on the discretionary financial obligations.

CONCLUSION

No. 31583-5-III
*State v. Long*

We remand this case to the trial court to vacate the order of restitution and to conduct a hearing on whether Michael Long has the ability or future ability to pay discretionary legal financial obligations.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

I CONCUR:

_____
Lawrence-Berrey, J.

15

31583-5-III

KORSMO, J. (dissenting) — The trial court was within its fact-finding authority to determine that Mr. Long possessed the stolen car during the time it was damaged. Accordingly, there was no abuse of discretion in imposing the restitution requirement. We should affirm.

Instead, the majority speculates on an unproven fact in a light favorable to the defendant, implicitly engaging in its own fact-finding rather than considering the facts as established by the guilty plea. The vehicle was discovered missing on July 6, 2012, and defendant was seen in possession of the car the same day. His illicit possession of the vehicle ended on July 8, 2012. Not coincidentally, Mr. Long was charged with unlawful possession of the stolen vehicle for that limited time period. He admitted his crime, thereby establishing the time period relevant to this restitution inquiry.

The unproven fact speculated on by the majority is that the car might have been taken sometime in the preceding month after Mr. Espinoza dropped the car off at the Dodge dealership. On this record, that is an unestablished irrelevancy. It might have been an interesting and probative fact if there was some evidence to show that the vehicle was taken before Mr. Long was discovered in possession of it. However, there is no evidence that it disappeared before July 6 or that any third person had the opportunity to

damage the vehicle before Mr. Long got it. Even more critically, the trial court made no finding that it disappeared sooner or that someone else controlled the vehicle. Without the trial court concluding one of those two things, there is no basis for this court doing so.

As it is, the only inference that can be drawn from the evidence is that the vehicle was damaged between July 6 and July 8 during the period when Mr. Long admitted he controlled the vehicle. The trial court understandably drew that inference. We should conclude that the evidence supports that determination. As it does.

The cases cited by the majority are not factually on point because in each instance there was a significant gap in time between the theft of the vehicle and the defendant's admitted possession of the stolen vehicle. If the record of this case established that the vehicle had been stolen before July 6, then the majority's analysis would appropriately place this case in the same circumstance as those cases. However, that is not what happened. The record establishes that the car was discovered missing on July 6 and defendant was seen in possession of the car later that day. There is no mysterious gap in time to raise a question concerning whether the defendant damaged the vehicle or not. On this record, there was no question that the only one in possession of the damaged vehicle during the time when it was known to be missing was the defendant. He understandably was held responsible for the damage committed during his possession of the car.

2

Finally, even under its own theory of the case, I also do not understand why the majority does not remand for a hearing to determine the extent of the defendant's responsibility. The record certainly supports imposing restitution for at least the destruction of the Vehicle Identification Number—the defendant's placing of his signature message allowed the trial court to attribute that damage to him—and the vehicle rental costs that did not arise until the victim knew he was deprived of the vehicle on July 6. Some of the other noted costs may similarly be tied expressly to the time period in which the defendant possessed the car. Even under the majority's view of the case there were costs attributable to the defendant that he could properly be assessed.

Since the only evidence in the case supports the trial court's factual findings rather than the majority speculation about the facts, I would affirm. I therefore respectfully dissent.

Korsmo, J.

3