IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33418-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NATHAN EARL ELDRED, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — Nathan Eldred challenges the imposition of restitution after he pled guilty to rendering criminal assistance and possession of stolen property. He claims that his crimes did not result in the victim's loss of the stolen goods. We conclude that the trial court did not abuse its discretion when finding that at least one of Eldred's crimes led to the victim's loss. We affirm the restitution award.

## FACTS

Mike Abbott owned a farm house and shed in Lincoln County, north of Davenport. During much of January and early February 2013, a period of heavy snow fall, Abbott absented the rural home. He returned home on February 14 to discover his home and shed burglarized. One or more intruders pushed in the back door to Mike Abbott's home and cut the lock from the shed's front sliding doors. The burglars took

from the shed two John Deere push lawn mowers, a Red Max weed eater, four Proxes tires with black wheels, four Kumho tires with Hoyo wheels, a Snap On tool box, and snowmobile covers.

Beginning on February 17, 2013, Lincoln County Sheriff Deputy Andy Manke investigated the burglary. Deputy Manke interviewed witnesses who claimed Stephen Murphy participated in the theft. Deputy Manke also heard that burglars used Nathan Eldred's pickup truck to transport stolen goods from Mike Abbott's farm. Spokane Tribal officers visited Eldred's Wellpinit home and observed a John Deere push mower in the open garage.

Lincoln County Sheriff Deputy Andy Manke interviewed Stephen Murphy and Nathan Eldred after each waived his respective *Miranda* rights. The confessions of each implicate both the confessor and the other suspect.

According to Stephen Murphy, Nick, aka Dough boy, and Kayla, aka K.C., burglarized Mike Abbott's home and shed at a time when Nick, Kayla and he resided at the Fort Spokane home of Rosemarie Murphy, Stephen's mother. We do not know the last names of Nick and Kayla. Nick and Kayla returned from the burglary to the Murphy home without the burglarized property. The two informed Steven Murphy that they needed a truck to move the purloined items. Murphy called Nathan Eldred, who drove his truck to Rosemarie Murphy's house. Eldred, K.C., and Nick then journeyed, in

2

Eldred's pickup truck, to Abbott's farmhouse and loaded tires and lawn mowers into the truck. Steven Murphy claimed he remained at his mother's house until the trio returned. Murphy then telephoned a Spokane drug dealer and arranged to exchange the tires for partial payment of Nick's debt to the dealer. Murphy removed one lawn mower from Nathan Eldred's pickup truck and left the mower at his mother's residence. Murphy then followed in his own vehicle as Eldred, Kayla, and Nick drove to Spokane and delivered the tires to the drug dealer.

Lincoln County Sheriff Deputy Andy Manke also interviewed Nathan Eldred. According to Eldred, he never went to Mike Abbott's farmhouse. Instead, Steven Murphy invited Eldred to visit at Rosemarie Murphy's home. On arrival at the Murphy abode, Eldred learned Steven wanted to use Eldred's truck to transport stolen property. Steven Murphy drove Eldred's pickup truck to Abbott's farmhouse with Nick as a passenger and Eldred following in Murphy's Jeep. Eldred parked on the side of the road while Murphy and Nick loaded the pickup truck at Abbott's farmhouse. Murphy, in the pickup truck, returned to his mother's house, and Eldred followed in the Jeep. Eldred then allowed Murphy to drive his truck, with Nick and Kayla as passengers, to take the stolen goods to Spokane. Eldred followed in Murphy's Jeep, but lost Murphy in Spokane traffic. Eldred waited at a ubiquitous Walmart, of unknown location. Murphy later arrived at the Walmart, the two exchanged vehicles, and Nathan Eldred drove his pickup truck home to Wellpinit.

3

Nathan Eldred admitted to Sheriff Deputy Andy Manke that he held possession of a green John Deere lawn mower. He claimed that Stephen Murphy abandoned the mower in his pickup truck.

The police recovered one of the stolen mowers at Nathan Eldred's residence and the other mower at the home of Rosemarie Murphy, Steven Murphy's mother. One of the stolen mowers was returned to Mike Abbott, but he had already purchased a replacement mower. There is no evidence that the police recovered any of the trafficked tires or wheels.

## PROCEDURE

The State of Washington initially charged Nathan Eldred with residential burglary and burglary in the second degree. On November 18, 2014, the State filed an amended information as part of a global resolution of this prosecution and a second prosecution against Eldred. Under the amended information, the State charged Eldred with rendering criminal assistance in the second degree, possession of stolen property in the second degree, driving while under the influence, and possession of a controlled substance. Eldred pled guilty to all four counts. The latter two charges entail a separate incident.

In Nathan Eldred's statement on plea of guilty, he declared: "Instead of making a statement, I agree that the court may review the police reports and/or a statement of probable cause supplied by the prosecution to establish a factual basis for the plea."

Clerk's Papers (CP) at 20. He also averred:

> If this crime resulted in injury to any person or damage to or loss of
> property, the judge will order me to make restitution, unless extraordinary
> circumstances exist which make restitution inappropriate. The amount of
> restitution may be up to double my gain or double the victim's loss.

CP at 15. Eldred and the State entered no agreement on restitution at the plea hearing.

Therefore, the trial court scheduled a later restitution hearing.

During the restitution hearing, the State of Washington requested an award of

$3,544.25. The State submitted the following receipts to support the restitution request: a

Les Schwab receipt for the purchase of one set of tires and wheels for $1,681.71; a 2010

receipt for a lawn mower and repairs costing $463.54; a 2012 receipt for a lawn mower

costing $424.94; and a handwritten receipt for a second set of tires costing $1,000.00.

Nathan Eldred contested imposition of any restitution other than the value of the lawn

mower found in his possession. He argued against imposition of any other restitution on

the basis that his crimes did not cause Mike Abbott's loss of other property.

The trial court imposed $3,106.65 in restitution: $424.94 for one of the lawn

mowers, $1,681.71 for one set of tires and wheels, and $1,000.00 for the other set of tires

and wheels. The trial court worried that the lawnmower receipts referred to the same

lawnmower, so it did not include the amount from the 2010 receipt in the restitution

award. In its order granting restitution, the trial court concluded:

> But for the Defendant providing transportation and assistance after
> the Burglary occurred and but for the Defendant's possession of stolen

5

property, the victim would not have suffered damages. Therefore, the imposition of restitution for all the items and damages requested by the State is appropriate and supported by law.

CP at 55.

## LAW AND ANALYSIS

Nathan Eldred appeals the order of restitution. Eldred argues restitution is not permitted when the loss or damage to the crime victim occurs before the act constituting the crime. He contends that the trial court erred in granting restitution because his convictions for rendering criminal assistance in the second degree and possession of stolen property in the second degree lack a causal connection with Mike Abbott's loss of his personal property. According to Eldred, the trial court imposed restitution based on a general scheme of criminal activity but that was not part of the crime. The State responds that an adequate causal link exists between Eldred's crimes and Abbott's property loss. We agree with the State.

The authority to impose restitution is not an inherent power of the court, but is derived from statutes. *State v. Gray*, 174 Wn.2d 920, 924, 280 P.3d 1110 (2012); *State v. Davison*, 116 Wn.2d 917, 919, 809 P.2d 1374 (1991). A number of statutes address restitution under varying circumstances. The controlling statute here is RCW 9.94A.753(5). The statute reads, in relevant part:

(5) Restitution shall be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property or as provided in subsection (6) of this section unless

6

extraordinary circumstances exist which make restitution inappropriate in the court's judgment and the court sets forth such circumstances in the record. In addition, restitution shall be ordered to pay for an injury, loss, or damage if the offender pleads guilty to a lesser offense or fewer offenses and agrees with the prosecutor's recommendation that the offender be required to pay restitution to a victim of an offense or offenses which are not prosecuted pursuant to a plea agreement.

RCW 9.94A.753.

One goal of restitution is to require the defendant to face the consequences of his conduct. *State v. Enstone*, 137 Wn.2d 675, 680, 974 P.2d 828 (1999); *State v. Dauenhauer*, 103 Wn. App. 373, 378, 12 P.3d 661 (2000). The statute is designed to promote respect for the law by providing punishment that is just. *State v. Davison*, 116 Wn.2d at 922. Restitution is both punitive and compensatory in nature. *State v. Kinneman*, 155 Wn.2d 272, 279-80, 119 P.3d 350 (2005).

Nathan Eldred disputed the State's claim for restitution. When a defendant disputes facts relevant to the determination of restitution, the State must prove the amount by a preponderance of the evidence at an evidentiary hearing. *State v. Dedonado*, 99 Wn. App. 251, 256, 991 P.2d 1216 (2000). A trial court's order of restitution is reviewed for abuse of discretion. *State v. Tobin*, 161 Wn.2d 517, 523, 166 P.3d 1167 (2007). Affording discretion often entails a reviewing court accepting the reasonable inferences drawn from the facts by the trial court.

Nathan Eldred challenges the causal relationship between his crimes and the restitution award. Case law expands on the language of RCW 9.94A.753(5). A trial court exceeds its statutory authority in ordering restitution when the loss suffered is not causally related to the offense committed by the defendant. *State v. Woods*, 90 Wn. App. 904, 907, 953 P.2d 834 (1998); *State v. Vinyard*, 50 Wn. App. 888, 891, 751 P.2d 339 (1988). Imposition of restitution must be based on a causal connection between the crime charged and the victim's damages. *State v. Tobin*, 161 Wn.2d at 523; *State v. Osborne*, 140 Wn. App. 38, 42, 163 P.3d 799 (2007); *State v. Woods*, 90 Wn. App. at 907; *State v. Bunner*, 86 Wn. App. 158, 160, 936 P.2d 419 (1997). Restitution for loss beyond the scope of the crime charged is properly awardable only when the defendant enters into an express agreement, as part of the plea bargain process, to make such restitution. *State v. Woods*, 90 Wn. App. at 909. Otherwise, a trial court's discretion in awarding restitution is limited to the "precise offense" charged. *State v. Woods*, 90 Wn. App. at 907; *State v. Harrington*, 56 Wn. App. 176, 179, 782 P.2d 1101 (1989); *State v. Ashley*, 40 Wn. App. 877, 878-79, 700 P.2d 1207 (1985). Although these rules speak in terms of the crime charged, the cases limit restitution to damages resulting from the crime of conviction. *State v. Mead*, 67 Wn. App. 486, 490-91, 836 P.2d 257 (1992).

Causation is proved by a "but for" inquiry. *State v. Tobin*, 161 Wn.2d at 524. Restitution is allowed only for losses that are causally connected to a crime and may not be imposed for a general scheme or acts connected with the crime charged. *State v.*

8

*Kinneman*, 155 Wn.2d at 286 (2005). Restitution may not be based on acts connected with the crime charged, when those acts are not part of the charge. *State v. Harrington*, 56 Wn. App. at 179; *State v. Hartwell*, 38 Wn. App. 135, 141, 684 P.2d 778 (1984), *overruled on other grounds by State v. Krall*, 125 Wn.2d 146, 881 P.2d 1040 (1994). Going further, under one of our decisions, restitution can be based only on damage caused during the dates for which the State charged the defendant with a crime. *State v. Woods*, 90 Wn. App. at 908-09 (1998).

We agree in theory with Nathan Eldred's argument that loss or damage occurring before the act constituting the crime cannot be causally connected. *State v. Woods*, 90 Wn. App. at 909. We also agree in theory with Eldred's contention that restitution may not be imposed based on the defendant's "general scheme" or acts "connected with" the crime charged, when those acts are not part of the charge. *State v. Woods*, 90 Wn. App. at 907-08 (1998). We think those principles, however, inapt under the circumstances of this appeal.

Pertinent to this appeal, Nathan Eldred pled guilty to two crimes. We need only decide if one of the crimes resulted in Mike Abbott's loss. We conclude that at least one of Eldred's crimes directly led to the removing of Mike Abbott's goods from Abbott's land.

Nathan Eldred argues that his rendering of criminal assistance did not cause Mike Abbott's losses and this crime does not qualify him for restitution. The criminal

9

assistance statute reads:

> A person is guilty of rendering criminal assistance in the second
> degree if he or she renders criminal assistance to a person who has
> committed or is being sought for a class B or class C felony or an
> equivalent juvenile offense or to someone being sought for violation of
> parole, probation, or community supervision.

RCW 9A.76.080. Rendering criminal assistance is an offense that can only occur after

the commission of the initial crime because otherwise it constitutes accomplice liability.

*State v. Anderson*, 63 Wn. App. 257, 261, 818 P.2d 40 (1991); *see also State v. Robinson*,

73 Wn. App. 851, 858, 872 P.2d 43 (1994). We do not address whether a conviction for

rendering criminal assistance can lead to a judgment for restitution for loss resulting from

the original crime of others since we may rest our decision on other grounds.

Under the facts of this case, Nathan Eldred's unlawful possession of stolen

property was one cause of Mike Abbott's losses. The possession statute reads:

> A person is guilty of possessing stolen property in the second degree if:
> (a) He or she possesses stolen property, other than a firearm as defined in
> RCW 9.41.010 or a motor vehicle, which exceeds seven hundred fifty dollars in
> value but does not exceed five thousand dollars in value . . . .

RCW 9A.56.160(1). We agree with Eldred that culpability for possession of stolen

property does not necessarily include culpability for the stealing of the property. The

actual thief is guilty of a different crime. *State v. Griffith*, 164 Wn.2d 960, 967, 195 P.3d

506 (2008). Once again, however, we consider these rules relevant to the issue on

appeal.

10

Nathan Eldred relies primarily on *State v. Griffith*, 164 Wn.2d 960 (2008), wherein the Supreme Court vacated an order of restitution against a defendant convicted of possessing stolen jewelry. The trial court assessed restitution for the value of all jewelry stolen from the victim. The Supreme Court reversed on the basis that the evidence did not show that Joan Griffith possessed all of the jewelry taken from the victim. Perhaps inconsistent with other decisions, the high court implied that restitution could be imposed on the possessor of stolen property regardless of whether the possessor participated in the theft.

More on point to this appeal is *State v. Rogers*, 30 Wn. App. 653, 638 P.2d 89 (1981). The trial judge entered a finding that Richard Rogers disposed of parts of a stolen truck and was to be paid a commission for doing so. The court held that, when the defendant's proven possession is part of a scheme to dispose of property and thereby leads to permanent deprivation of an owner's property, a defendant is chargeable with such deprivation, and restitution for the value of the item is proper.

The case on appeal holds unique facts. Nathan Eldred was likely not involved in the initial burglary at Mike Abbott's home. Nevertheless, the court did not award restitution for damage to the house and shed resulting from the burglary. More importantly, the burglars could not remove the purloined articles of property the day of

11

the initial entry on the rural land. Instead, they solicited Eldred's assistance to remove the stolen items from Mike Abbott's land. Abbott did not lose possession of his lawn mowers, tires, weed eater, and tool box until Eldred participated in the crime and Eldred removed the items in his pickup truck.

The trial court could accept the statement of Steven Murphy as to how the crime occurred. Under Murphy's version of the story, Nathan Eldred was physically present on the farmland when burglars removed the stolen goods and placed the items in Eldred's pickup truck. Eldred drove the truck. The trial court could infer from the evidence that all goods were taken from the property at the same time and placed in the pickup of Nathan Eldred.

Nathan Eldred contends that he assisted the thieves only by helping them forgo apprehension. Eldred also contends no evidence supports that he knew others would use his pickup truck to remove stolen goods. As already outlined, substantial evidence and inferences from the evidence rebut these contentions. Under Stephen Murphy's story, Eldred knew his truck was needed to remove stolen goods from Mike Abbott's farmland.

Nathan Eldred's motion to deny appeal costs is granted. We deny the State costs on appeal.

## CONCLUSION

We affirm the trial court's imposition of $3,106.65 in restitution against Nathan Eldred.

12

No. 33418-0-III
*State v. Eldred*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Siddoway, J.

13