IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 77776-9-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| SIMON ORTIZ MARTINEZ, | |
| Appellant. | FILED: July 1, 2019 |

ANDRUS, J. — Simon Ortiz Martinez[1] challenges his conviction for first degree child rape, arguing the trial court erred in admitting statements the victim made to friends and her mother under the "fact of the complaint" hearsay exception. He also challenges several community custody sentencing conditions. We affirm Martinez's conviction, and affirm in part and reverse in part the challenged community custody conditions.

## FACTS

On April 26, 2017, the State charged Martinez with one count of first degree child rape,[2] alleging that between July 22, 2009 and July 21, 2012, Martinez had sexual intercourse with his biological daughter, Y.M., who was born July 22, 2000.

---

[1] There is some question as to whether Appellant's name is Simon Martinez Ortiz or Simon Ortiz Martinez. While the judgment and sentence refers to him as Ortiz Martinez, at trial, parties referred to him as Martinez Ortiz. And when he testified, he identified himself as Simon Martinez. Thus, we refer to him as Martinez throughout the opinion.

[2] RCW 9A.44.073.

The State sought to introduce the testimony of four witnesses—two of Y.M.'s friends, the mother of one of her friends, and Y.M.'s mother—to confirm that Y.M. had reported being raped. The State argued this evidence was admissible under the "hue and cry" or "fact of the complaint" exception to the hearsay rule. Martinez moved to exclude this testimony, arguing Y.M.'s disclosures were not made until June and November 2014, two years after the end of the 2012 charging period, and the "fact of the complaint" exception did not apply to such untimely disclosures. The State contended that because Martinez continuously abused Y.M. starting at the age of 5 until she left home at age of 14, her disclosures were timely.

The trial court ruled the statements were admissible. It reasoned:

> Historically also the [d]octrine required that the complaint be timely . . . . But this timeliness requirement was changed in 1949 in a case called State v. Murley . . . . So essentially my read of Murley is that it dispensed with the six month, or any particular time limit on that . . . .
>
> So since Murley, evidence focuses mainly on the credibility of the complaining victim, and the timeliness of the complaint is no longer a predicate fact that must be proved before admission of the complaint. So after Murley, . . . there's no timeliness requirement, so to speak.

While discussing ER 404(b) objections to instances of abuse pre-dating the charging period, the court sought clarification from the State as to whether the "fact of the complaint" statements Y.M. made related to rapes that occurred during the charging period or sometime thereafter. As a part of its ER 404(b) offer of proof, the State provided the court with a transcript of Y.M.'s child forensic interview from March 2016, a police report from the Marshalltown, Iowa police which summarized

2

her forensic interview testimony, and a copy of Y.M.'s medical records. The State indicated that while Martinez's abuse continued until 2014, it sought to admit only those acts of sexual abuse that had occurred before—but not after—the charging period under ER 404(b). The State clarified that the "fact of the complaint" testimony was not specific to any particular incident of rape, but related to "everything that's happened throughout her life."

Based on this clarification, the trial court ruled that the witnesses could testify that Y.M. had reported being raped, but they could not recount any statements Y.M. may have made about the duration of the abuse, the dates of any abuse, or the identity of the reported abuser.

At trial, Y.M. testified that Martinez first started abusing her when she was five years old when he touched her vagina. Y.M. also testified that her father forced her to rub his penis with her hands. Y.M. recounted an incident when Martinez spit on his hands and wiped the spit on his penis and on her vagina, and tried to insert his penis into her vagina. Because it hurt "really bad," she "kept telling him to stop." Y.M. testified that over time her father's inappropriate touching became a daily occurrence and that sexual intercourse occurred at least every other week. After Y.M. began menstruating when she was 11 or 12 years old, her father began using condoms during intercourse.

Y.M. recounted how Martinez brought her pets and suggested he would purchase other pets for her if she continued to do as he asked. Y.M. also testified that her father often told her that if she ever told anybody about what was happening, he would "get in really big trouble."

To corroborate Y.M.'s version of events, the State elicited testimony from Y.M. that Martinez was not circumcised. Martinez stipulated that he is not circumcised, and the court read this stipulation to the jury. As the State indicated prior to trial, it did not elicit any evidence from Y.M. regarding sexual abuse or intercourse that occurred after her 12th birthday.

A.T., a high school friend, testified that in June 2014, Y.M. told her she had been molested and raped. A.T. told Y.M. that if she did not tell her mother about being raped, she would tell her own mother about it.

That night, Y.M. told her mother, Ramona Rios, that she had been raped by Martinez. Rios made Y.M. confront her father with the story. Martinez denied Y.M.'s accusations. Rios, in shock over the allegations, fled into the woods, where she remained for hours. Y.M. locked herself in the bathroom holding a gun until Martinez demanded she return the gun to him. Rios chose not to take Y.M. to the police or to a hospital because Y.M. did not want the family torn apart and wanted to keep the abuse secret.

After this confrontation, Y.M. felt things became very tense around the house. Rios admitted she did not want Y.M. to be alone with Martinez. Y.M. began to run away from home in October and November 2014, because she "felt like a burden at the house" after telling her mother about being raped by her father.

Another one of Y.M.'s high school friends, C.R., testified that Y.M. stayed with her over Thanksgiving in November 2014. And at that time, Y.M. told C.R. that she "had been raped." C.R.'s mother, Melissa John, testified that a week or two after Thanksgiving, C.R. asked her if she would pick Y.M. up from an

apartment complex because Y.M. had nowhere to stay that night. Y.M. told John that "she had been . . . abused and that she didn't want to go home."

Martinez testified in his defense and denied that he had ever had sexual relations with his daughter.

The jury found Martinez guilty as charged. The trial court sentenced him to an indeterminate sentence of confinement—123 months to life. The sentence included standard and special conditions for community custody related to sex offenses, pursuant to RCW 9.94A.703 and RCW 9.94A.704. Martinez appeals.

## ANALYSIS

### A. Hearsay Statements

Martinez argues the trial court erred in admitting Y.M.'s out-of-court statements to third-party witnesses under the "fact of the complaint" hearsay exception. We review a trial court's interpretation of an evidentiary rule de novo as a question of law and review the decision to admit evidence for an abuse of discretion. State v. Gunderson, 181 Wn.2d 916, 921-22, 337 P.3d 1090 (2014). An abuse of discretion occurs when a trial court's decision is manifestly unreasonable or based on untenable grounds or reasons, such as a misconstruction of a rule. Id. at 922.

Martinez first argues that the "fact of the complaint" rule is not a valid exception to the hearsay rule because it is not found in the rules of evidence. The rule, derived from the ancient doctrine of "hue and cry," is a case law exception to the hearsay rule, which allows the State to introduce evidence in sex offense cases that the victim made a timely complaint to someone after being assaulted.

State v. Murley, 35 Wn.2d 233, 236-37, 212 P.2d 801 (1949); State v. Chenoweth, 188 Wn. App. 521, 532, 354 P.3d 13 (2015). Under the rule, the trial court may admit evidence that a victim reported that he or she was sexually assaulted, raped, or molested. State v. Ferguson, 100 Wn.2d 131, 135-36, 667 P.2d 68 (1983). Evidence of the details of the complaint, including the identity of the offender and the nature of the act, are not admissible. Id.

The hue and cry rule was originally based on the antiquated notion that "a female naturally complains promptly of offensive sex liberties upon her person." Murley, 35 Wn.2d at 237. Courts now recognize there are many reasons why a victim may wait to report a sexual assault. See, e.g., State v. Graham, 59 Wn. App. 418, 421-25, 798 P.2d 314 (1990) (affirmed admissibility of expert witness testimony that delay by young women in reporting sexual abuse is not uncommon). And the hue and cry exception appears to have largely been replaced in favor of specific evidentiary rules. See, e.g., State v. Makela, 66 Wn. App. 164, 172-74, 831 P.2d 1109 (1992) (no error to admit testimony from three witnesses to whom victim reported rape under ER 801(d)(1)(ii)); State v. Wilson, 60 Wn. App. 887, 889-91, 808 P.2d 754 (1991) (evidence of prior assaults on wife admissible under ER 404(b) to explain wife's delay in reporting sexual abuse and to rebut implication that molestation did not occur). But our Supreme Court has nevertheless expressly held that the "fact of the complaint" hearsay exception remains good law. See, e.g., Ferguson, 100 Wn.2d at 144. Trial courts are required to follow Supreme Court precedent. See Marriage of Snider, 6 Wn. App. 2d 310, 315, 430 P.3d 726 (2018) (under vertical stare decisis, courts are required to follow decisions handed

down by higher courts in same jurisdiction). Thus, the trial court did not err in evaluating the State's proffered evidence under the "fact of the complaint" exception.

Martinez next argues the trial court erred in admitting Y.M.'s out-of-court statements because they were not timely as required by the exception. The trial court appears to have concluded that Murley dispensed with the timeliness requirement. But the Supreme Court has reiterated the timeliness requirement since Murley. In Ferguson, the Supreme Court stated that "[t]he rule admits only such evidence as will establish that the complaint was timely made." 100 Wn.2d at 135-36; see also Chenoweth, 188 Wn. App. at 532-33 (rejecting State's argument that timeliness is no longer required). The trial court thus erred in concluding that a showing of timeliness is unnecessary.

This court, however, can affirm an evidentiary ruling on any ground supported by the record. State v. Powell, 126 Wn.2d 244, 259, 893 P.2d 615 (1995); Spencer v. Badgley Mullins Turner, PLLC, 6 Wn. App. 2d 762, 785, 432 P.3d 821 (2018), review denied, 438 P.3d 119 (Wash. 2019).

In this case, the State presented evidence to the trial court to establish that Y.M. reported that her father was raping her while the sexual abuse was still ongoing. Before trial, the State's offer of proof included evidence that Y.M. told law enforcement that Martinez continued to abuse her until she left the family home in December 2014. The trial court recounted on the record that the State had presented evidence that even after Y.M.'s disclosure to A.T. and Rios in June 2014, the rapes continued "largely unabated until December 2014." Thus, the

7

record supports a determination that Y.M.'s complaints in June and November 2014 were timely because they occurred while she was still being abused.

Although the State did not elicit evidence at trial that Martinez continued to rape Y.M. throughout 2013 and 2014, the trial court's admissibility ruling was not based on trial evidence but instead on the State's pretrial offer of proof. ER 104(a) provides that preliminary questions regarding the admissibility of evidence must be made by the court outside the presence of the jury. The rules of evidence do not apply when the trial court is making an admissibility determination, and the court may consider evidence that would be inadmissible at trial. ER 1101(c)(1); State v. Jones, 50 Wn. App. 709, 712, 750 P.2d 281 (1988). When we evaluate the trial court's admissibility decisions, we review the evidence presented to the court when the court rendered its admissibility decision, not the evidence ultimately admitted at trial. See Jones, 50 Wn. App. at 712. The State's offer of proof established the admissibility of the evidence. See State v. Kilgore, 147 Wn.2d 288, 293, 53 P.3d 974 (2002).

Martinez next argues that to be admissible, Y.M.'s complaint had to have occurred during the charging period. But he cites no authority for this proposition. Here, the State chose to charge Martinez with first degree child rape. To convict Martinez of first degree child rape, the jury had to find the rape occurred before Y.M.'s 12th birthday. See RCW 9A.44.073 ("A person is guilty of rape of a child in the first degree when the person has sexual intercourse with another who is less than twelve years old . . . ."). As a result, the charging period ended before Y.M.'s

12th birthday on July 22, 2012. The charging period had nothing to do with the date on which Martinez ceased his sexual molestation of Y.M.

Once the State established that Y.M.'s reports were timely, any delay in her reporting the abuse became a credibility issue for the jury. State v. Fleming, 27 Wn. App. 952, 957, 621 P.2d 779 (1980) ("The complaint is admitted as bearing on the credibility of the complainant."); see also State v. Thomas, 52 Wn.2d 255, 257, 324 P.2d 821 (1958). Martinez's defense was that Y.M. completely fabricated the charge against him. Martinez had the opportunity to cross-examine Y.M. and to ask her why she did not report her father's rape until 2014. Martinez also had ample opportunity to cast doubt on Y.M.'s credibility through testimony from her mother. Based on the record before us, we conclude the trial court did not abuse its discretion in admitting fact of the complaint testimony. Thus, we affirm Martinez's conviction for first degree child rape.

B. Community Custody Conditions

Martinez also challenges several of the community custody conditions imposed at sentencing. Community custody conditions are reviewed for an abuse of discretion and will only be reversed if they are manifestly unreasonable. State v. Nguyen, 191 Wn.2d 671, 678, 425 P.3d 847 (2018). "A trial court's imposition of an unconstitutional condition is manifestly unreasonable." Id.

1. Crime Related Conditions

Martinez challenges the following community custody conditions as not crime related.

> 5. Inform the supervising CCO and sexual deviancy treatment provider of any dating relationship. . . . Sexual contact in a

9

relationship is prohibited until the treatment provider approves of such

6. Obtain prior permission of the supervising CCO before changing work location

9. Do not enter sex-related businesses, including x-rated movies, adult bookstores, strip clubs, and any location where the primary source of business is related to sexually explicit material

10. Do not possess, use, access or view any sexually explicit material as defined by RCW 9.68.130 or erotic materials as defined by RCW 9.68.050 or any material depicting any person engaged in sexually explicit conduct as defined by RCW 9.68A.011(4) unless given prior approval by your sexual deviancy provider

As a condition of community custody, a sentencing court may, in its discretion, impose "any crime-related prohibitions." RCW 9.94A.703(3)(f). A "crime-related prohibition" is defined as "an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). There is no abuse of discretion if a "reasonable relationship" exists between the crime of conviction and community custody condition. Nguyen, 191 Wn.2d at 684 (quoting State v. Irwin, 191 Wn. App. 644, 658-59, 364 P.3d 830 (2015)). "The prohibited conduct need not be identical to the crime of conviction, but there must be 'some basis for the connection.'" Id. (quoting Irwin, 191 Wn. App. at 657). "So long as it is reasonable to conclude that there is a sufficient connection between the prohibition and the crime of conviction, we will not disturb the sentencing court's community custody conditions." Id. at 685-86.

## Notice of Dating Relationship (Condition 5)

The sentencing court did not abuse its discretion when ordering that Martinez notify his CCO of any dating relationship. The sentencing court has discretion to order an offender to refrain from "direct or indirect contact with the victim of the crime or a specified class of individuals." RCW 9.94A.703(3)(b). Martinez was convicted of raping his minor daughter, with whom he lived with her mother. The condition is reasonably crime related to protect other minor children if Martinez ever dates someone who has minor children.[3] See State v. Kinzle, 181 Wn. App. 774, 785, 326 P.3d 870 (2014) (holding that sentencing court did not abuse its discretion to prohibit Kinzle from dating women with minor children or forming relationships with families with minor children because he was convicted of molesting children with whom he came into contact due to a social relationship with their parents). This condition furthers the State's essential need to protect children. Thus, it is crime related, and the sentencing court did not abuse its discretion by imposing the condition.[4]

## Prohibition on Sexual Contact (Condition 5)

Martinez also challenges the prohibition on "[s]exual contact in a relationship" without prior approval of a CCO or treatment provider. The State concedes that the prohibition is not related to his crime. We accept the State's

---

[3] Martinez also argues this condition is unconstitutionally vague. The Supreme Court held otherwise in Nguyen, 191 Wn.2d at 683.

[4] Martinez relies on State v. Moultrie, 143 Wn. App. 387, 177 P.3d 776 (2008), to argue the dating relationship notice requirement is not crime-related. But Moultrie was a vagueness and overbreadth challenge to the condition that he not have contact with "vulnerable, ill or disabled adults." Id. at 396. The case did not analyze the dating relationship condition.

11

concession and remand for the sentencing court to strike that prohibition from Condition 5.

### Permission to Change Work Location (Condition 6)

Next, Martinez argues that Condition 6, requiring him to obtain prior permission of the supervising CCO before changing work location, is not crime-related. Where a condition is authorized by statute, it need not be crime related. See State v. Acevedo, 159 Wn. App. 221, 234, 248 P.3d 526 (2010). RCW 9.94A.703(2)(b) provides that "[u]nless waived by the court, as part of any term of community custody, the court shall order an offender to . . . [w]ork at department-approved . . . employment." The sentencing court did not waive this standard condition, and Martinez does not challenge it. Thus, Condition 6 is statutorily authorized as an extension of the condition that he must work at employment approved by the Department of Corrections. The sentencing court did not abuse its discretion in ordering Martinez to obtain permission from a CCO before changing his place of employment.

### Entering Sex-Related Business (Condition 9) or Possessing Sexually Explicit Material (Condition 10)

Lastly, Martinez challenges the provisions of community custody conditions 9 and 10, which prohibit him from entering sex-related businesses or possessing sexually explicit material. In Nguyen, the Supreme Court held these conditions are appropriate ways to control a sex offender's deviant sexual impulses. 191 Wn.2d at 686. Accordingly, the sentencing court did not abuse its discretion by imposing these conditions as a way of helping control Martinez's sexual urges.

With the exception of prohibiting "[s]exual contact in a relationship" in Condition 5, we conclude that the challenged community custody conditions are crime related.

## 2. Unconstitutionally Vague Conditions

Martinez challenges the following community custody conditions as unconstitutionally vague.

> 10. Do not possess, use, access or view any sexually explicit material as defined by RCW 9.68.130 or erotic materials as defined by RCW 9.68.050 or any material depicting any person engaged in sexually explicit conduct as defined by RCW 9.68A.011(4) unless given prior approval by your sexual deviancy provider

> 18. Stay out of areas where children's activities regularly occur or are occurring. This includes parks used for youth activities, schools, daycare facilities, playgrounds, wading pools, swimming pools being used for youth activities, play areas (indoor or outdoor), sports fields being used for youth sports, arcades, and any specific location identified in advance by DOC or CCO

Due process guarantees that laws not be vague, meaning that citizens must be afforded fair warning of proscribed conduct. U.S. CONST. amend. XIV, § 1; WASH. CONST. art. 1, § 3; State v. Bahl, 164 Wn.2d 739, 752, 193 P.3d 678 (2008). A community custody condition is unconstitutionally vague if Martinez demonstrates either (1) that the condition does not sufficiently define the prohibition so an ordinary person can understand the prohibition, or (2) that the condition does not provide sufficiently ascertainable standards to protect against arbitrary enforcement. Bahl, 164 Wn.2d at 752-53; see also Nguyen, 191 Wn.2d at 678. If either requirement is not satisfied, the condition is unconstitutionally vague. Bahl, 164 Wn.2d at 753.

13

A community custody condition "is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his actions would be classified as prohibited conduct." City of Seattle v. Eze, 111 Wn.2d 22, 27, 759 P.2d 366 (1988). Rather, a condition is unconstitutionally vague only "if persons of common intelligence must necessarily guess at its meaning and differ as to its application." City of Seattle v. Webster, 115 Wn.2d 635, 643, 802 P.2d 1333 (1990). To reduce any possible chilling effect, a stricter standard of definiteness applies to materials protected by the First Amendment. Bahl, 164 Wn.2d at 753.

### Erotic Materials and Depictions of Sexually Explicit Conduct (Condition 10)

Martinez challenges the constitutionality of the prohibition on possession of "erotic materials" and depictions of "sexually explicit conduct."[5] Our Supreme Court already rejected a similar argument in Bahl. In that case, the Court concluded that neither phrase is unconstitutionally vague in the context of a prohibition on frequenting "establishments whose primary business pertains to sexually explicit or erotic material." 164 Wn.2d at 758-60. Although the holding arose in a slightly different context, the reasoning applies to the condition at issue here. Condition 10 is not unconstitutionally vague.

### Areas Where Children's Activities Regularly Occur (Condition 18)

Martinez raises a vagueness challenge to Condition 18, requiring him to avoid "areas where children's activities regularly occur." He argues that phrase

---

[5] Martinez also challenges the constitutionality of the prohibition on sexually explicit material, but the Supreme Court held in Nguyen that this condition of community custody is not unconstitutionally vague. 191 Wn.2d at 681.

14

does not provide adequate notice of what is prohibited and allows for arbitrary enforcement. We agree in part.

In Irwin, this court held that the phrase "where children are known to congregate" was unconstitutionally vague. 191 Wn. App. at 654-55. And Division Two of the court agreed that the condition invited a completely subjective standard for interpreting "places where children congregate." State v. Wallmuller, 4 Wn. App. 2d 698, 703-04, 423 P.3d 282 (2018), review granted, 192 Wn.2d 1009, 432 P.3d 794 (2019).

We find no difference between "areas where minor children are known to congregate" and "areas where children's activities regularly occur." While some of the locations, such as daycare facilities and schools, are clear, other illustrative locations, such as "parks used for youth activities," are not. There is no standard for determining the frequency or regularity with which children's activities must take place for the area to be permanently off limits. And the State has provided no rationale for requiring Martinez to stay out of areas where children's activities sometimes occur, such as a sports field, even when no children are present. As written, Condition 18 is unconstitutionally vague.

Condition 18, however, does not allow for arbitrary enforcement. In Irwin, this court determined that a similar condition that gave a CCO the discretion to define prohibited areas, without "some clarifying language or an illustrative list of prohibited locations," left the condition vulnerable to arbitrary enforcement. 191 Wn. App. at 655. Unlike in Irwin, the condition in this case authorizes the CCO to

designate in advance specific locations where Martinez cannot frequent. Thus, the condition does not invite arbitrary enforcement.

We affirm Martinez's conviction for first degree child rape. We remand for the sentencing court to strike that portion of Condition 5 that prohibits sexual contact in a relationship. We further remand for the court to modify Condition 18 to be consistent with this opinion. We otherwise affirm the remaining conditions.

_Andrus, J._

WE CONCUR:

_Dwyer, J._          _Schindler, J._